738 F.2d 323
 11 Collier Bankr.Cas.2d 152, Bankr. L. Rep. P 69,924
In re Theodore George HULM, a/k/a Ted Hulm, Debtor.
FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF BISMARCK, INC., Appellee,
v.
Theodore George HULM, a/k/a Ted Hulm, Appellant.
FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF BISMARCK, INC., Appellee,
v.
Theodore G. HULM, a/k/a Ted Hulm, Appellant.
In re Theodore George HULM, a/k/a Ted Hulm, Debtor.
FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF BISMARCK, INC., Appellant,
v.
Theodore George HULM, a/k/a Ted Hulm, Appellee.
FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF BISMARCK, INC., Appellant,
v.
Theodore G. HULM, a/k/a Ted Hulm, Appellee.
In re Theodore George HULM, a/k/a Ted Hulm, Debtor.
FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF BISMARCK, INC., Appellee,
v.
Theodore George HULM, a/k/a Ted Hulm.
FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF BISMARCK, INC., Appellee,
v.
Tom A. BRIGHAM, Trustee, Appellant.
 Nos. 83-2060, 83-2085 and 83-2143.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Feb. 17, 1984.
Decided July 5, 1984.
 
 James P. Rausch, Bismarck, N.D., for appellee/cross-appellant.
 Richard G. Carver, Bismarck, N.D., Alan Grindberg, Steele, N.D., for appellant/cross-appellee.
 Before BRIGHT, ARNOLD and FAGG, Circuit Judges.
 FAGG, Circuit Judge.
 
 
 1
 The questions in this case are (1) whether a foreclosure of a mortgage pursuant to the North Dakota statutory scheme, involving a judicial foreclosure sale and issuance of a sheriff's deed following expiration of a redemption period, effects a transfer of an interest of the debtor in property within the meaning of 11 U.S.C. Sec. 548(a), which permits the bankruptcy trustee to avoid a fraudulent transfer of an interest of the debtor in property, and, if so, (2) whether absent improprieties the price received for property at a judicial foreclosure sale provides a reasonably equivalent value for the transfer of the debtor's interest under 11 U.S.C. Sec. 548(a)(2)(A) as a matter of law. We hold that foreclosure of a mortgage pursuant to the North Dakota statutory scheme effects a transfer of an interest of the debtor in property, and that on remand the bankruptcy court must conduct an evidentiary hearing to determine whether the sale price at the judicial foreclosure sale which occurred in this case provided a reasonably equivalent value in exchange for the transfer of the debtor's interest.
 
 
 2
 George Hulm and Linda Heikes granted a mortgage on residential property to First Federal Savings & Loan Association of Bismarck on November 24, 1978, to secure a note for $61,000. Hulm and Heikes failed to make payments as required, and on November 12, 1981, a notice of intention to foreclose was served. A complaint commencing the foreclosure action was served on December 31, 1981, a default judgment foreclosing the mortgage was entered on February 4, 1982, and the house was sold at a judicial foreclosure sale on March 4, 1982. First Federal purchased the property at the foreclosure sale for $64,443.64, an amount which represented the unpaid balance of the note, accrued interest, and statutory costs awarded in the foreclosure action. On July 9, 1982, following expiration of the statutory period for redemption, a sheriff's deed was issued to First Federal, giving it title to the property. Hulm filed his petition in bankruptcy on July 26, 1982.
 
 
 3
 First Federal filed this adversary action seeking a determination that the property was not a part of Hulm's bankruptcy estate and a modification of the automatic stay so that First Federal could proceed with eviction proceedings under state law. Heikes had already been evicted. The trustee contended that the mortgage foreclosure should be set aside because it was a preferential transfer under 11 U.S.C. Sec. 547 or a fraudulent transfer under 11 U.S.C. Sec. 548. The bankruptcy court rejected both contentions, but only the fraudulent transfer question is presented to us on appeal.
 
 
 4
 The principal rules governing fraudulent transfers are found in 11 U.S.C. Sec. 548, which provides in pertinent part:
 
 
 5
 (a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor--
 
 
 6
 * * *
 
 
 7
 * * *
 
 
 8
 (2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
 
 
 9
 (B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation * * *.
 
 
 10
 There appears to have been no real dispute concerning whether Hulm fell within the insolvency requirement of section 548(a)(2)(B)(i). Similarly, there is no doubt that the judicial foreclosure sale, the expiration of the redemption period, and issuance of the sheriff's deed all occurred within one year before Hulm's bankruptcy petition was filed. As a consequence, we are not asked to decide in this appeal precisely when during the foreclosure process the transfer took place. We are concerned with the remaining elements of a fraudulent transfer, i.e., whether the mortgage foreclosure procedures in this case effected a transfer of an interest of the debtor in property and whether a reasonably equivalent value was received in exchange for the transfer.
 
 
 11
 The bankruptcy court held that absent a showing of fraud or collusion the sale price at a judicial foreclosure sale is a reasonably equivalent value for the property transferred, and that since there was no such showing in the present case, any transfer resulting from the foreclosure sale could not be set aside under 11 U.S.C. Sec. 548(a). On appeal the district court held that sale of the property at the foreclosure sale was a transfer within the meaning of 11 U.S.C. Sec. 548(a), and then, after discussing the facts involved, concluded that the sale price was a reasonably equivalent value. At that time, however, no evidentiary hearing had been conducted concerning the issue of reasonably equivalent value. Although the bankruptcy court and the district court focused on the total price received for the property at the sale, it is more accurate to consider the value received for Hulm's interest, which comprised less than all rights in the property. This point is not of practical significance, however, since examination of the adequacy of the total sale price necessarily subsumes the issue of the adequacy of the value received for Hulm's interest.
 
 
 12
 On appeal Hulm and the trustee contend that the district court erred in its determination that the sale price at the foreclosure sale was a reasonably equivalent value under 11 U.S.C. Sec. 548(a)(2)(A). In its cross-appeal First Federal contends that the transfer of Hulm's interest occurred when the mortgage was recorded and perfected under state law on November 29, 1978, more than one year before Hulm's bankruptcy petition was filed. First Federal also contends that actual market value is irrelevant because absent a showing of fraud or collusion the sale price at a judicial foreclosure sale is a reasonably equivalent value for the property transferred as a matter of law.
 
 
 13
 The question of whether the judicial foreclosure of a mortgage effects a transfer within the meaning of section 548(a) is a question of federal law. See McKenzie v. Irving Trust Co., 323 U.S. 365, 369-70, 65 S.Ct. 405, 407-08, 89 L.Ed. 305 (1945). Thus, to aid in determining whether the foreclosure of the mortgage was a transfer of an interest of the debtor in property, we turn to the definition of transfer found in 11 U.S.C. Sec. 101(41): " '[T]ransfer' means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest." If at the time of the mortgage foreclosure Hulm held an interest in the property, the language of section 101(41) clearly establishes that the mortgage foreclosure procedure in this case effected a transfer. Section 101(41) expressly includes involuntary transfers, and neither section 101(41) nor section 548(a) indicates that to fall within their terms the transfer had to be made by Hulm himself.
 
 
 14
 The term "interest of the debtor in property" is not defined in the Bankruptcy Code, however, and thus we look to state law to determine whether the debtor had an interest in property. See Butner v. United States, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979); Johnson v. First National Bank of Montevideo, 719 F.2d 270, 273 (8th Cir.1983), cert. denied, --- U.S. ----, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984). We have no difficulty in concluding that under North Dakota law Hulm had an interest in the property at the time of its sale, and at least until expiration of the redemption period. The mortgage held by First Federal was only a defeasible conveyance giving it the right to satisfy Hulm's unpaid debt from the property. See Pioneer Credit Co. v. Latendresse, 286 N.W.2d 445, 447 (N.D.1979). As a mortgagee, First Federal did not have a title interest in the property. Aure v. Mackoff, 93 N.W.2d 807, 811 (N.D.1958). Hulm remained the legal owner of the property until foreclosure, and his interest was alienable. Knowlton v. Coye, 76 N.D. 478, 37 N.W.2d 343, 347 (1949). Hulm's interest also included the right to possession of the property until the end of the redemption period, see N.D.Cent.Code Sec. 28-24-11, and the right to the excess of the value of the property over First Federal's mortgage, see N.D.Cent.Code Sec. 32-19-10. At the foreclosure sale Hulm's interest was transferred, subject to redemption. Hulm's equity of redemption was likewise an interest in the mortgaged property which could be conveyed. See Robar v. Ellingson, 301 N.W.2d 653, 657 (N.D.1981). Issuance of the sheriff's deed terminated Hulm's interest in the property. See N.D.Cent.Code Sec. 32-19-09.
 
 
 15
 In support of its contention that the transfer of Hulm's interest in the property occurred when the mortgage was perfected, First Federal cites 11 U.S.C. Sec. 548(d)(1) which provides:
 
 
 16
 For the purposes of this section, a transfer is made when such transfer becomes so far perfected that a bona fide purchaser from the debtor against whom such transfer could have been perfected cannot acquire an interest in the property transferred that is superior to the interest in such property of the transferee, but if such transfer is not so perfected before the commencement of the case, such transfer occurs immediately before the date of the filing of the petition.
 
 
 17
 This section only determines when a transfer is deemed to have occurred, not whether a certain occurrence is a transfer of an interest of the debtor in property. See McKenzie v. Irving Trust Co., supra, 323 U.S. at 369-70, 65 S.Ct. at 407-08. Hence, the transfer of an interest accomplished by Hulm's granting the mortgage to First Federal occurred, by the terms of section 548(d)(1), when the mortgage was perfected. But as we have already noted, Hulm retained an interest in the property after the mortgage was perfected. Section 548(d)(1) is in no way inconsistent with our conclusion that separate and distinct interests in property may be transferred at different times. It is our view that foreclosure of the mortgage under the North Dakota statutory scheme effected a transfer of the interest retained by Hulm after he granted a mortgage to First Federal.
 
 
 18
 We now turn to the issue of whether a reasonably equivalent value was received for Hulm's interest in property which was transferred as a result of the mortgage foreclosure. The bankruptcy court relied on In re Madrid, 21 B.R. 424, 427 (Bankr. 9th Cir.1982), and concluded that absent a showing of fraud or collusion the sale price at a judicial foreclosure sale is a reasonably equivalent value for the property transferred as a matter of law. The bankruptcy court did not hold an evidentiary hearing in order to develop a record from which a determination could be made whether the price bid at the foreclosure sale provided a reasonably equivalent value for Hulm's interest in the property. In support of the bankruptcy court's holding, First Federal has cited only the bankruptcy appellate panel's decision in In re Madrid, supra, 21 B.R. at 427. While the Ninth Circuit affirmed that decision, In re Madrid, 725 F.2d 1197 (9th Cir.1984), in doing so the court expressly declined to adopt the reasoning of the bankruptcy appellate panel. Id. at 1199.
 
 
 19
 We disagree with the approach taken by the bankruptcy court. We do not believe that the sale price at a regularly conducted foreclosure sale, although absent fraud or collusion, can automatically be deemed to provide a reasonably equivalent value in exchange for the interest of the debtor transferred within the meaning of section 548(a). In our view, the question of whether the sale price provided a reasonably equivalent value cannot be answered without an evidentiary hearing. Accordingly, we vacate the judgment of the district court and remand to the bankruptcy court for an evidentiary hearing and for a determination of whether the sale price at the foreclosure sale provided a reasonably equivalent value in exchange for the transfer of Hulm's interest in the property.
 
 
 20
 We are aware of expressed concern that the result we have reached will affect the strategies of purchasers at judicial foreclosure sales. See In re Madrid, 725 F.2d 1197, 1202 (9th Cir.1984); Abramson v. Lakewood Bank & Trust Co., 647 F.2d 547, 550 (5th Cir.1981) (Clark, J., dissenting), cert. denied, 454 U.S. 1164, 102 S.Ct. 1038, 71 L.Ed.2d 320 (1982). The Bankruptcy Code provisions are clear, however, and direct the result we have reached. Hence, policy considerations cannot affect the outcome in this case, but must be addressed, if at all, by Congress.