**In the Matter of Carl Junior ANNIS and Irene Anna Annis, Debtors.**

**Carl Junior ANNIS and Irene Anna Annis, Plaintiffs,**

v.

**FIRST STATE BANK OF JOPLIN and Paul and Betsy A. Williamson, Defendants.**

Bankruptcy Nos. 86–01223–SW–13, 86–5164–CV–SW–0.

Adv. A. No. 86–0135–SW–13.

United States Bankruptcy Court, W.D.Missouri, Southwestern Division.

Aug. 5, 1987.

Susanna Jones, Joplin, Mo., for plaintiffs/debtors.

Robert L. Bradley, Blanchard, Van Fleet, Martin, Robertson & Dermott, Joplin, Mo., for First State Bank.

Gayle L. Crane, Joplin, Mo., for Paul and Betsy Williamson.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND FINAL JUDGMENT AGAIN DENYING PLAINTIFFS' COMPLAINT

DENNIS J. STEWART, Chief Judge.

This court formerly entered its final judgment denying the complaint of the chapter 13 debtors to recover their foreclosed residence as a fraudulent transfer within the meaning of section 548(a)(2) of the Bankruptcy Code and *Matter of Hulm*, 738 F.2d 323 (8th Cir.1984), and *Durrett v. Washington Nat. Ins. Co.*, 621 F.2d 201 (5th Cir.1980). It was the finding of this court, on denying the complaint for recovery, that there was no evidence of balance-sheet insolvency, as is a prerequisite to recovery under section 548(a)(2), *supra*.[1]

---

1. In its written findings of fact and conclusions of law of July 10, 1986, this court pertinently stated as follows: "The trouble with plaintiff claim ... is that no evidence of insolvency has been shown. The plaintiffs did not even advert to the schedules in this regard. (The schedules, further, tend to reflect solvency rather than insolvency.) It seems an unfortunate result under the circumstances, but this court, as any other court, can decide cases only on the basis of the evidence properly submitted to it. And there being no evidence of insolvency, the transfer cannot be regarded as fraudulent within the meaning of section 548(a)(2) of the Bankruptcy

The district court, on appeal, reversed the above described decision of this court and remanded the action to this court for further findings.[2] It seemed to be the sense of the district court, in issuing the order of reversal and remand, that a bank-

ruptcy court should always take judicial notice of the court file if a party fails to prove an element of its claim or defense which might have been proven by resort to the court file.[3] Such a rule might well impose a nearly impossible burden on bankruptcy judges[4] and would seem to cause

---

Code. Insofar as the complaint requests avoidance of the transfer itself, accordingly, it must be denied."

2. In its order of remand of March 30, 1987, the district court concluded as follows: "I have no doubt that the bankruptcy court, like any other court, has authority to take judicial notice of its own files and records, but given that the items contained in these records are often not the ordinary fare of judicial notice subject matter, *see* F.R.Evid. 201(b), I believe it only reasonable that the disadvantaged party be afforded notice and an opportunity to respond. This approach represents a middle ground ... in that the full panoply of information available to the bankruptcy judge may be brought to bear on a contested issue and at the same time, accommodates the due process concerns ... it was not unreasonable for appellants to assume that the entire record of their bankruptcy action would be reviewed in reaching a decision. The bankruptcy court did consider the schedules filed with the Chapter 13 proceeding in performing its 'reasonably equivalent value' analysis. It appears from the limited record before me that the schedules were not introduced at trial, nor was the issue of judicial notice raised by the court or the parties. Under the circumstances, I believe the appropriate course of action would have been for the court to advise the parties that it was contemplating taking judicial notice of specific documents and allowing them to show cause why it should not do so." It must be mentioned, however, that the district court was in error in assuming that the portion of the schedules relating to the value of the property was judicially noticed. That was offered in evidence by the plaintiffs and not objected to by the defendants. Further, it was independently admissible, when testified to by the plaintiffs, which it was, as the owner's present opinion of the value of the property.

3. Even if it is admittedly true that the subject matter of the judicial notice is not that which can be judicially noticed under the Federal Rules of Evidence. See note 2, *supra*.

4. It seems to be the district court's view that this burden of assessing every case and undertaking to supply evidence from the files and records in the court's possession is required by certain case authority. The case decisions which are cited by the district court and said to support the proposition that judicial notice should be taken of the files and records, regardless of the admissibility therein, do not support that proposition. In all those decisions, "judicial notice," as it was

perhaps improperly termed (rather than simply the admission of admissible evidence), was taken of the files and records which would have been independently admissible in evidence, as non-hearsay admissions of the debtor, or as non-hearsay to prove the fact or timing of certain filings, when those matters were in issue in the case. The district court cites *In re Saco Development Corp.*, 30 B.R. 862, 865 (Bkrtcy.D. Me.1983), for the proposition that the bankruptcy judge should take judicial notice of the entire file in every case. In that case, however, despite its general—and erroneous—proclamations to the contrary, the court carefully restricted its use of "judicial notice" to those portions of the file which bore on the issue of whether an alleged preferential transfer would enable the transferee to receive more than it would have received in straight liquidation. In such an instance, the contents of the file—who filed claims, when, for how much, and whether they have been allowed—would be *determinative* of the "receive more" issue. They are the acts to be evidenced. Accordingly, those contents are not hearsay. "If the making of the utterance is the ultimate thing sought to be proven in the case, rather than a device for proving the thing, the suspicion of hearsay attaches the least. So it is that the topic of utterances as operative conduct is one of the simplest application under the hearsay rule. No question of possible testimonial or narrative use can arise when the speaking of the words determines the rights being litigated. Thus it is that such typical examples as the making of a promise, the speaking of a slander, the printing of a libel, the speaking of marriage vows are all species of extra-judicial utterances provable despite the hearsay rule because they are the operative conduct of the speaker. For them there is no possible question of the trustworthiness of the utterance ..." Strahorn, A Reconsideration of the Hearsay Rule and Admissions, 85 U.Pa.L. Rev. 484, 490 (1937). The same is true of this court's prior decision in *Matter of Abernathy*, 38 B.R. 768 (Bkrtcy.W.D.Mo.1983), affirmed, 38 B.R. 769, (W.D.Mo.1984)—which the district court mis-cited a "In re Love, 38 B.R. 771 (W.D. Mo.1984)." In that case, the files of the court were conclusive on the crucial fact that the case was a no-asset case in which no claims were filed or were invited to be filed. Of the same type of "judicial notice" was *In re Hollander*, 25 B.R. 905, 911 (Bkrtcy.W.D.Mo.1982)—simply of what claims had been filed and their nature when that appeared to be an issue. And in *Matter of Gervich*, 570 F.2d 247, 253 (8th Cir.

unfair and unnecessary intrusion of the judiciary in the conduct of the trial of cases by counsel for the respective parties.[5]

■ On close reading of the district court decision, however, this court does not believe that the district court intended to impose on bankruptcy judges the omnipresent risk of reversal on appeal unless they see that the parties' counsel offer the evidence which fully supports their respective claims or defenses. The authorities cited by the district court do not support that proposition.[6] The result in such an instance could offend due process standards,[7] when, as in this case, the plaintiffs have testified and have made no mention of any fact concerning solvency or insolvency, or have not testified at all. In such instances, they would not have made themselves available for cross-examination. ("Cross-examination should be limited to the subject matter of the direct examination and

matters affecting the credibility of the witness." Rule 611(b), Federal Rules of Evidence.[8]) And, it is an affront to due process and the confrontation clause if a prior statement is regarded as admissible and "cannot be tested by cross-examination." *Bruton v. United States*, 391 U.S. 123, 136, 88 S.Ct. 1620, 1628, 20 L.Ed.2d 476 (1968). When these considerations come into focus, it is imperative that this court give the district court order a construction which makes it lawful and sensible rather than an unlawful directive.[9]

■ This court therefore concludes that it was the intention of the district court, in remanding this action, to require this court to *consider* taking judicial notice of the files and records in this case on the issue of insolvency. Again, to *compel* this court to take judicial notice of the schedules on the issue of insolvency and hold, as

1978), it was only held that "judicial notice" may properly be taken of schedules to demonstrate that certain debts in fact existed when that would have been an admission by the debtor. To a similar effect is *In re Leach*, 35 B.R. 100, 102 (Brktcy.W.D.Ky.1983), in which the schedules were "noticed" to demonstrate the debtor's knowledge that he had not reported several liabilities in his credit application with a bank. And, when the issue is whether there has been substantial delay in a reorganization proceeding, the files and records in the case may be non-hearsay, reflecting the extent of the delay. *In re Ponn Realty*, 4 B.R. 226 (Bkrtcy.Mass. 1980). But none of these cases, or any of the multitudes cited in their respective texts, stands for the proposition that inadmissible hearsay may be bootstrapped in evidence by employing the practice of "taking judicial notice of the files." In assuming that the judicial notice which might be taken in this case would be of evidence which is admissible, the district court simply begs the question, which is most crucially, as observed above, of the admissibility of the evidence. Despite the excursis in the district court opinion on the issue of whether a judge must grant notice to the parties in taking judicial notice *sua sponte,* there can be no issue in that regard. Rule 201(e) of the Federal Rules of Evidence requires the giving of such notice. And there is no indication in any of the decisions cited that such notice was not given.

5. It is too fundamental to require citation of authority that a judge should not be a witness in a case over which he presides.

6. See note 4, *supra*

7. It is not a denial of constitutional due process to admit hearsay in the trial of a case to prove a material element. *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970) ("(S)ubstantive use of prior inconsistent statements (is constitutionally permissible) on the theory that the usual dangers of hearsay are largely nonexistent where the witness testifies at trial.") (Even in this regard, however, it must be observed that the federal rule of evidence is to the contrary. See, e.g., *United States v. Dye*, 508 F.2d 1226, 1234 (6th Cir.1974). And, as observed elsewhere in this memorandum, there is no federal hearsay exception for prior statements of a witness generally. But, it would certainly seem to mount to a constitutional violation for a court to base its determination wholly on *inadmissible* hearsay, as would necessarily be the case if the court were compelled to take judicial notice of evidence of solvency in the schedules. For, under Rule 201(g) of the Federal Rules of Evidence, "(i)n a civil action or proceeding, the court shall instruct the jury to accept as conclusive any fact judicially noticed."

8. Although a court may grant a cross-examiner permission under special circumstances, to exceed the bounds of the direct examination, but, in that event, "the cross-examiner must proceed as if on direct examination." Historical Note under Rule 611(b), Federal Rules of Evidence.

9. "A judgment is not, under general rules applicable to the subject, presumed to be erroneous, but, to the contrary, is presumed to be valid ..." 46 Am.Jur.2d *Judgments* section 28, p. 332 (2d ed. 1969).

the district court appears to hold,[10] that such creates a *prima facie* case of insolvency, would be to violate the rules governing admissibility of evidence. Under the Federal Rules of Evidence, prior statements of parties are admissible in evidence only if they are classified as non-hearsay or if they come within some exception to the rule excluding hearsay. Generally, they are classified as non-hearsay and are thus admissible only if (1) they are prior inconsistent statements made under oath; (2) they are prior consistent statements offered to rebut an express or implied charge against the witness of recent fabrication or improper influence or motive; or (3) they are statements of identification of a person. Rule 801(d)(1), Federal Rules of Evidence. "The position taken by the Advisory Committee in formulating this part of the rule is founded upon an unwillingness to countenance the general use of prior prepared statements as substantive evidence." Notes of Advisory Committee under Rule 801, Federal Rules of Evidence. Thus, statements in schedules respecting the issue of solvency *vel non* are frequently admitted as admissions of an alleged debtor in hearings in which they are resisting being declared insolvent.[11] But to admit such statements in this action, in which the declarant is the party asserting insolvency, would patently violate the governing rules of evidence.[12] These rules would have applied so as to compel exclusion of the schedules from evidence on this issue, even had they been explicitly offered in evidence by debtors' counsel. The schedules' admissibility on this issue is even more certainly foredoomed under the doctrine of judicial notice, under which a court generally may not take judicial notice of adjudicative, as opposed to legislative, facts.[13] If a fact is in issue in the trial of a case, a court is not permitted judicially to notice it unless it is so manifestly common knowledge or so accurately and readily ascertainable that no reasonable mind could fail to believe it.[14] Under this standard, the bankruptcy court could take judicial notice that the debtors had made certain *contentions* in the schedules, but that is far from saying that the contentions themselves may be judicially noticed as proof of their truth. And judicially to notice the schedules simply to observe that the debtors had once made certain contentions as to solvency would not be probative to any issue in the case and would accordingly constitute a futile and useless effort. This court should not and will not conclude that the district court intended for this court to carry out, in pursuance of its order of remand, a wholly futile and useless effort. Accordingly, this court declines to take judicial notice of the schedules on this issue. In this manner, this court performs its duty under the district court's order of remand by considering taking judicial notice and declining to do so.

## II

The same principles do not admit of the court's taking judicial notice of the schedules to conclude that they in fact constitute an admission of the debtor to the effect that they were solvent on the date of bank-

10. Cf. note 8, *supra.*

11. And, in order to demonstrate the timing of filings or the fact of filing of claims, they are admissible, under limited circumstances, in preference and avoidance of lien cases. See 1 Collier on Bankruptcy para. 1.19, pp. 130.0, 130.11, n. 18 (14th ed. 1978) ("Schedules have universally been held to be admissible against the bankrupt himself as admissions ... and the rule has been extended *against* the trustee ...")

12. See page 2 of the text of this memorandum, *supra,* and note 4, *supra.*

13. "(T)he adjudicative facts are those to which the law is applied in the process of adjudication. They are the facts that normally go to the jury in a jury case. They relate to the parties, their activities, their properties, their businesses. Legislative facts are the facts which help the tribunal determine the content of law and of policy and help the tribunal to exercise its judgment or discretion in determining what course of action to take." Davis, Administrative Law section 15.03

14. "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Rule 201(b), Federal Rules of Evidence.

ruptcy. Counsel for the bank did not offer the schedules for that purpose during the trial of this action and, as observed above, a court is prohibited from taking notice of adjudicative facts.

But the court's review of the schedules shows that, if they were admitted in evidence, they would demonstrate solvency rather than insolvency.[15] Thus, this court will re-enter the judgment denying the plaintiffs' complaint for this separate and independent reason.

■ And it must be observed that, even if the schedules were admissible and did demonstrate insolvency as of the date of bankruptcy, that would be insufficient, without more, to demonstrate insolvency as of the date of the foreclosure, as is required by section 548(a)(2), *supra.*[16]

### III

■ In brief summary, the only way that plaintiff could have a reasonable chance of overturning this court's prior judgment is if the district court order of remand were construed simply to the effect that plaintiffs must now be permitted to offer evidence on the issue of insolvency at the time

---

15. The schedules which were filed by the debtors purport to show that the family residence had a value of $8,000, which more than wipes out the $1,961.52 indebtedness to the First State Bank of Joplin. The remainder of the value is claimed as the homestead exemption by the debtors. Otherwise, $1,528 of scheduled unsecured debt is shown to have existed at the time of filing. The amount to which the debtors were entitled out of the foreclosure sale, $1,815.82, is properly claimed as exempt only if it can be said that it has been claimed out of their equity in the property. "Defendants' land being subject to a deed of trust, they were entitled to a homestead exemption in what remained of the total value of the land after deducting the indebtedness secured by the deed of trust." *Karszznia v. Kelsey,* 262 S.W.2d 844, 845 (Mo.1953). The undenied contents of the claim filed by the First State Bank of Joplin showed that, in addition to the $1,961.52 due as principal, there was also $240.63 due as interest to the date of the foreclosure sale, October 10, 1985, and $482.03 as the costs of foreclosure. Because the residence continued to be essentially out of the hands of the creditor until the date of bankruptcy, March 17, 1985, the interest should have continued to run until that date. This would mean that the bank would have been entitled to recover interest in an amount additional to that for which judgment was entered in its favor in this action. In what amount, the files and records are not conclusive or even indicative. But the bank would have been entitled to some amount which would have to be subtracted from the "equity" portion of the property in determining the amount properly exempt. See section 506(b) of the Bankruptcy Code: "To the extent that an allowed secured claim is secured by property the value of which ... is greater than the amount of the claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided under the agreement under which such claim arose." Thus, this unknown cannot be claimed as exempt, even though it was part of the $1,815.82 which the court ordered returned to the debtors for failure of the defendant First State Bank of Joplin to file any counterclaim or claim for setoff of it. (The counterclaim would appear to be compulsory under the provisions of section 550(d)(1)(D) of the Bankruptcy Code).

Additionally, the $300 exemption claimed under section 513.430(3) on account of a second automobile cannot, as a matter of law, be allowed. When the Missouri statutory scheme permits an exemption for only one vehicle and when, moreover, that section limits the value claimable to $400, and the debtors have otherwise claimed more than $100 for that exemption in property other than the second automobile, the exemption appears not to be allowable. And the debtors do not disclose directly how much of their $747 monthly income was on hand as of the date of filing. In view of their failure to do so, the court is justified in presuming that the whole $747 was still intact. So, rather than establish insolvency, the schedules only raise the question as to whether the unknown amount of interest, when added to $1047 in non-exempt property, would exceed the $1,528 in scheduled unsecured debt. The decisional authorities are clear to the effect that the plaintiffs in actions to recover transfers under section 548(a)(2) of the Bankruptcy Code must establish the debtors' insolvency as of the date of the transfer. Thus, for the foregoing reasons, the schedules, as they exist, cannot, without more, sustain that burden. Further, see note 17, *infra.*

16. The transfer took place more than six months prior to the date of bankruptcy. During that period of time, the debtors may have had a dwindling of their cash deposits or of other assets that may have had to be expended for living or other expenses. And, at least some of the debt is shown to have been incurred since the date of the foreclosure sale. In cases in which "there was no evidence connecting the condition represented by the schedules with that of the crucial date," the case authorities have held the schedules inadmissible. 1 Collier on Bankruptcy para. 1.19, p. 130.11, n. 18.

of transfer. But for this court so to construe the order of remand would be to ignore the rule that parties may offer additional evidence after trial has been completed and after judgment only if they demonstrate, on a timely served motion for new trial, that they have discovered new and material evidence which, in the exercise of due diligence, they could not have discovered in time for use at trial. It is true that the plaintiffs may have a sympathetic case—the property repossessed by the bank was, after all, their modest home in which they had lived for many years and in which they had a not inconsiderable equity. But, even so, under the most cherished traditions of American law, we eschew the granting of judgments or verdicts on the basis of sympathy alone, always insisting that they be based upon evidence, admitted in accordance with longstanding legal principles, which proves a statutorily or otherwise defined entitlement to relief. Our democratic legal principles continue correctly to refuse to predicate relief solely upon a litigant's economic circumstances or his or her social or economic class. To do so, we believe, is consistent only with systems of justice which are alien to our own, under which economic plight or social or economic class may well be the sole determinant of judicial dispositions. We accordingly oppose those systems as constituting no justice at all, but rather an according of awards according to one's station in life, a brushing aside of jurisprudential principle under the highly dubious rubric that the end justifies the means.

Yet, even the end or result seems almost always to be impeached, morally as well as legally, when appropriate process is ignored or squelched. In this case, for instance, the debtors' having continued to reside in the subject property during the pendency of the appeal and remand without making adequate protection—and perhaps rent—payments has likely worked a detri-

ment equally to themselves and to the defendant bank. For, not only has the bank been deprived, without compensation, of its collateral, but the debtors may also have built up such an arrearage of payments due to the bank that it would be impossible now to enter into any compromise under which they would recover their property and otherwise defray a chapter 13 plan.[17]

Thus, for the foregoing reasons, and each and all of them separately and independently, it is hereby

ORDERED, ADJUDGED AND DECREED that plaintiffs' within complaint for recovery of an alleged fraudulent transfer under section 548(a)(2) of the Bankruptcy Code be, and it is hereby, denied. Plaintiffs shall have and recover the sum of $1,815.82 from the defendant First State Bank of Joplin.

---

**17.** The schedules, as a matter of fact, do not, without more, resolve the question of whether the debtors would be entitled to claim the $1,815.82 returned to them as exempt property attributable to their homestead. The decisional authorities hold that, whether the proceeds of sale of the homestead are exempt depends on the debtors' intention to reinvest the monies in another homestead within a reasonable period of time. See 40 Am.Jur.2d *Homestead* para. 48, p. 148 (2d ed. 1968). Thus, without more, the schedules themselves do not demonstrate the exempt character of this property.