In re William J. STEFFAN, Debtor.

Michael J. BALANOFF, as Trustee in Bankruptcy, Plaintiff,

v.

Louis GLAZIER, Esq. as Trustee of the William J. Steffan Trust and WJS Trust, William J. Steffan, and Gloria Steffan, Defendants.

Bankruptcy No. 87–01834.
Adv. No. 89–0019.

United States Bankruptcy Court,
N.D. New York.

Feb. 24, 1989.

Grass, Balanoff, Costa & Whitelaw, P.C., Syracuse, N.Y., for trustee; Mary Lannon Fangio, of counsel.

David W. Pelland, Syracuse, N.Y., for William Steffan.

Sheldon G. Kall, Syracuse, N.Y., for Louis Glazier.

Stephen S. Karp, N. Syracuse, and Lucien Ali, Syracuse, N.Y., for Gloria Steffan.

## MEMORANDUM–DECISION, FINDINGS OF FACT CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Bankruptcy Judge.

This matter comes before the Court on the motion of Plaintiff Michael J. Balanoff, Esq. as Trustee in Bankruptcy ("Trustee") to enjoin the transfer of some $290,220.00 to one Gloria Steffan pursuant to an Order of the New York State Supreme Court under §§ 362(a)(2) and 105(a) of the Bankruptcy Code, 11 U.S.C.A. §§ 101–1330 (West 1979 & Supp.1988) ("Code").

On February 10, 1989, the Court granted a Temporary Restraining Order and scheduled a hearing on the Order to Show Cause

for 1 p.m. on February 15, 1989 at Utica, New York.

Following the hearing, the Court extended the Temporary Restraining Order an additional ten days to February 25, 1989.

The Court has jurisdiction of this matter pursuant to 28 U.S.C.A. §§ 1334 and 157(a), (b)(1) and (2)(A, E, O) (West Supp.1988).

## FACTS

On February 10, 1989, the Trustee commenced an adversary proceeding against Louis Glazier, Esq. as Trustee of the William J. Steffan Trust and the WJS Trust ("Glazier"), William J. Steffan and Gloria Steffan.

In that adversary proceeding, the Trustee alleged that William J. Steffan, the Debtor herein, filed a voluntary petition pursuant to Chapter 7 of the Code on December 21, 1987.

The complaint filed and served in the adversary proceeding further alleges that while the Debtor listed the two trusts in his petition, he claimed they were not assets of his bankrupt estate. Likewise, he did not list monies advanced to the trusts as loans or accounts receivables.

The Trustee goes on to allege that he has just recently learned that as part of the marital settlement between the Debtor and the defendant Gloria Steffan, the William J. Steffan Trust, heretofore referred to as irrevocable, will turn over to the latter the sum of $290,220.00 in satisfaction of the former's personal marital obligations and that this will involve said trust's dissolution.

As and for his relief in the adversary proceeding, the Trustee seeks a declaration as to whether or not the William J. Steffan Trust and the WJS Trust are revocable *ab initio* and thus revocable at the time of the bankruptcy filing so that upon reversion to the Settlor, the Debtor, the assets of the Trusts became property of the estate. The Trustee also requests a determination of the Debtor's individual claims, if any, against Glazier and the two Trusts and requests the Court to enjoin Glazier from releasing the Trusts to either of the two

defendants or a successor trustee. The Trustee buttresses his complaint upon the Court's exclusive jurisdiction over property of the estate.

In support of the Trustee's motion for an injunction, he claims that the William J. Steffan Trust was established in 1968 with a corpus consisting of the Debtor's residence and its beneficiaries being Debtor's wife and children. *Plaintiff's Exhibit 9.* It is alleged that the marital residence was sold at some point pre-bankruptcy with the consent of all parties and that the Trust corpus presently consists of $350,000.00 being held by Glazier. *Plaintiff's Exhibit 5.*

Relying on a separation agreement dated March 14, 1985, *Plaintiff's Exhibit 1*, the Trustee contends that as a result of the matrimonial action between the Debtor and Defendant Gloria Steffan, the William J. Steffan Trust was to be dissolved in order for the Debtor to satisfy his property and support obligations to his wife. *Plaintiff's Exhibits 2, 3, 4, 6, 7, 8.* The Trustee also claims to have only recently discovered documentation indicating that the Debtor made loans to the Trust in his individual capacity, rather than in the representative capacity he had alleged in his petition. *See, e.g., Plaintiff's Exhibit 11* (Letter from William J. Steffan to L.J. Glazier, Trustee) (July 17, 1986) (alleging $53,818.10 owed to "him and the corporation" by both trusts, and additional similar loans of some $124,600.00).

Finally, the Trustee, in seeking the injunction, referred to an Order of the New York State Supreme Court entered in the matrimonial action between the Debtor and the Defendant Gloria Steffan which directs Glazier to turn over $290,220.00 to the attorneys for the Defendant Gloria Steffan on February 13, 1989.

In response to the Trustee's motion, the Defendant Gloria Steffan contends that the William J. Steffan Trust is not being dissolved but rather amended and that while the Trustee may have claims against the Trust, there would be sufficient remaining assets (approximately $85,000.00 in the William J. Steffan Trust and over $200,000.00 of equity in the WJS Trust) to satisfy the

Trustee's claims even after she is paid the $290,000.00.

The Defendant–Debtor William J. Steffan responds that the Trustee's action is untimely and unfounded, that there has been no attempt on his part to conceal assets or the matrimonial action in his bankruptcy case, .that the Trustee examined him extensively at the Code § 341 meeting and that his alleged claims were groundless and asserted solely for leverage in the matrimonial action, after which they were withdrawn. In spite of the foregoing, the Debtor alleges further that most of the claims are barred by the applicable statute of limitations and that they arose from monies paid by corporations of which he was an employee and not from his personal funds.

Glazier only seeks authorization to petition the New York State Supreme Court for the payment of his attorney's fees and trustee commissions and to thereafter transfer the remaining funds to the Onondaga County Treasurer and be relieved of his duties.

At the hearing held before the Court on February 15, 1989, the Trustee called two witnesses, Glazier and his counsel, Sheldon G. Kall, Esq. ("Kall"). The parties, by their attorneys, also stipulated twelve exhibits into evidence which were received by the Court.

In his testimony, Glazier stated that he was Trustee of the William J. Steffan Trust, which currently consisted of cash in a Merrill Lynch, Pierce, Fenner & Smith account, and of the WJS Trust, established in 1982, which consisted of real property known as the Cazenovia Post Office and a Norstar checking account. *Plaintiff's Exhibit 9* (copy of William J. Steffan Trust agreement). He denied that the Debtor had any actual claims against either trust, by virtue of having resided rent-free in the residence, and alleged that a letter dated May 1, 1985 written by him to the Debtor, acknowledging advances made by the Debtor to the trusts as loans, was untrue. *Plaintiff's Exhibit 10.* Glazier further testified that the letter was actually prepared in 1986 by the Debtor's then-counsel, Anthony Langan, Esq. ("Langan"), with the Debtor's acquiescence and although Glazier told the Debtor he had no such claims against the trusts, he agreed to backdate and send the letter on his own letterhead to assist the Debtor in his pending matrimonial action, having been the Debtor's accountant for some thirty-odd years. *Plaintiff's Exhibit 12.*

He stated that the Debtor had made many requests for funds due to the Debtor or his own corporations but that he as trustee never reimbursed the Debtor personally for any loans advanced. *See, e.g., Plaintiff's Exhibit 11.* Glazier also testified that the Debtor did advance funds for the payment of bills, such as real estate taxes and utilities, when the Debtor was living in the residence, which was up to the time of sale. He stated that accountings he filed in the "action pending in the Supreme Court" up to October 31, 1987 and supplemental accountings from November 1, 1987 into 1988 did not reflect any liability of the Trust to the Debtor personally but that the Debtor's claim, as far as he was concerned, had not yet been decided and was still alive. Glazier asserted that his attorney recently had indicated to him that the Debtor regarded the accounting incomplete because it did not reflect debts to him or his "entities" but that Kall had corresponded to the Debtor that the accounting would not be changed.

Glazier acknowledged an Order To Show Cause and Petition signed by the Debtor and his son Timothy on November 13, 1987, in a state court proceeding against Glazier as trustee and individually which sought to compel a judicial settlement of both trust accounts, to set aside the real estate sale of the corpus of the William J. Steffan Trust and to pay the Debtor $394,022.00, plus interest, for loans the Debtor made to Glazier as Trustee. *Plaintiff's Exhibit 5.*

Glazier stated that at the time of said petition by the Debtor and his son, the corpus of the William J. Steffan Trust, which contained the proceeds of the real property conveyance, exceeded $300,000.00 but was not as high as the amount the Debtor claimed in personal loans. How-

ever, he asserted that the Debtor's claims arose sometime in March or April of 1986 and might have included loans to the WJS Trust. Glazier also acknowledged a paragraph in the March 14, 1985 Separation and Property Settlement Agreement authorizing the Debtor to advance monies to preserve the residence and for reimbursement from the sale proceeds. *Plaintiff's Exhibit 1*, p. 7.

Finally, Glazier also acknowledged that he has been ordered by the Honorable Parker J. Stone, a Justice of the New York State Supreme Court, to turn over the balance of the William J. Steffan Trust fund to a successor trustee, Sarah Shippy, after writing certain checks, including one to Defendant Gloria Steffan in the amount of $292,220.00 but none of which were to be to the Debtor. He testified that he had no knowledge of any judicial request having been made for the dissolution of the William J. Steffan Trust or the final disposition of the Debtor's personal claims against him.

Glazier's attorney Kall testified that the May 1988 meeting before Judge Stone resulted in a stipulation settling all pending actions but that there was no disposition on the claims of the Debtor or his corporations since the trust accounting did not show any such liability. Thus, he stated that any claim the Debtor made was not included in the stipulation despite Langan's statement at that meeting that the Debtor "disclaims any personal benefit resulting from the Trust arrangements as not being any direct asset or benefit to himself for the purpose of a pending Federal bankruptcy matter in U.S. District Court, Northern District of New York." *Plaintiff's Exhibit 6*, p. 15. Kall stated that, to the best of his knowledge, the Trustee, who was not present, was not put on notice of this meeting.

Kall also testified that Glazier had filed an original and supplemental accounting up to November 1988 and prepared general releases consenting to the accounting to be signed by all the parties before Glazier would disburse any trust funds pursuant to an order by Judge Stone dated November 15, 1987. Kall noted that he received con-

sents from all but William and Timothy Steffan and thereafter was contacted by the Debtor's counsel indicating the Debtor's objections on the grounds that the accounting was incomplete. He responded by letter that the accounting would not be amended.

At the close of the hearing, counsel for Defendant Gloria Steffan argued that an injunction should not issue since the personal loans alleged by the Debtor would not exceed some $30,000.00 of accounts receivables, as evidenced by the Debtor's letter to Glazier in July 1986, *Plaintiff's Exhibit 11*, given the six year statute of limitations, which could be satisified from the present corpus of the William J. Steffan Trust and the WJS Trust, containing monies of $370,000.00 to $375,000.00 and $300,000.00 to $400,000.00 against a $100,-000.00 mortgage, respectively.

The Trustee rebutted the Debtor's suggestions of laches by pointing to misinformation in the Debtor's petition and in testimony at the meeting of creditors and the absence of notification of proceedings in the matrimonial action.

## DISCUSSION

Styled as an order to show cause, the Court has treated the instant motion pursuant to Rule 65(b) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."), incorporated by Bankr.R. 7065, and likewise, under the same authority, has continued the restraining order pending its resolution. The Court further finds this motion to be governed by Code §§ 362(a) and 105(a), as well as Fed.R.Civ.P. 65(d) and Bankr.R. 7052, 9014 and 9017. While the Court cannot rule on the merits of the underlying adversary proceeding, they invariably must be weighed in deciding the instant motion.

At the outset, the Court notes its jurisdiction to entertain this adversary proceeding and the instant motion, which seek a determination as to the amount and nature of the parties' rights, title and interests in the Trusts—*including whether there is property of the estate involved*—and an injunction against the release of any portion of the Trusts to Defendant Gloria Stef-

fan under the marital separation agreement, as a core proceeding because of its exclusive jurisdiction over property of the debtor and property of the estate, by virtue of 28 U.S.C.A. § 1334(d). *See Johns–Manville Corp. v. Equity Security Holders Committee (In re Johns–Manville Corp.),* 801 F.2d 60, 63–64 (2d Cir.1986); *Garrity v. Leffler (In re Neuman),* 71 B.R. 567, 572–573 (S.D.N.Y.1987); *Baptist Medical Center of New York v. Singh (In re Baptist Medical Center of New York),* 80 B.R. 637, 645 (Bankr.E.D.N.Y.1987).

■ This is so notwithstanding the pending matrimonial action, commenced pre-petition, for although the bankruptcy court has limited jurisdiction, the distribution of property of the estate, broadly defined in Code § 541(a), *see United States v. Whiting Pools, Inc.,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), is a federal question which gives rise to the bankruptcy court's preemptive jurisdiction over property, precluding disposition of that property by any other court. *See White v. White (In re White),* 851 F.2d 170 (6th Cir.1988); *In re Wilson,* 85 B.R. 722 (Bankr.E.D.Pa. 1988); *Levine v. Levine (In re Levine),* 84 B.R. 22 (Bankr.S.D.N.Y.1988); *In re Palmer,* 78 B.R. 402 (Bankr.E.D.N.Y.1987); *Johnson v. Johnson (In re Johnson),* 51 B.R. 439, (Bankr.E.D.Pa.1985). *See also* 4 L. King, COLLIER ON BANKRUPTCY ¶ 541.01 at 541–13 (15th ed. 1988).

As Bankruptcy Judge Marvin A. Holland has recently stated

Clearly, then, while the adjudication of all rights, duties, and entitlements as between the debtor and the spouse are within the exclusive province of the state matrimonial court, it is within the exclusive province of the bankruptcy court to adjudicate the rights of creditors as against property of the debtor and property of the estate. To the extent that the state matrimonial court adjudicates an equitable distribution in favor of the non-debtor spouse, such award becomes a claim within the context of 11 U.S.C. § 101(9). The non-debtor spouse's claim is an entitlement against the debtor's estate, and thus she becomes one of the general unsecured creditors of the estate.

*In re Palmer, supra,* 78 B.R. at 406.

■ While the exclusions to property of the estate under Code § 541(b) and (c) are narrowly construed, *see In re Gifford,* 93 B.R. 636, 638 (Bankr.N.D.Ind.1988) (citing *In re Cook,* 43 B.R. 996, 999 (N.D.Ind.1984) and *In re Jones,* 43 B.R. 1002, 1005 (N.D. Ind.1984)); *see generally United States v. Whiting Pools, Inc., supra,* 462 U.S. at 198, 103 S.Ct. at 2309, the existence of a trust in bankruptcy proceedings is determined by state law. *See Danning v. Bozek (in re Bullion Reserve of North America),* 836 F.2d 1214, 1217 (9th Cir.1988). Where the debtor, "in one capacity or another" dominates all aspects of the trust to the extent that he exercises absolute dominion and control over the assets, his interest in the trust has been found to constitute property of the estate. *In re Gifford,* 93 B.R. 636, 637 (Bankr.N.D.Ind.1988). *See also* Section 10–10.6 of the New York Estates, Powers And Trusts Law (McKinney 1967 & Supp.1989) ("NYEPTL").

It is axiomatic that all rights the debtor had in the trust at the time of filing inure to the bankruptcy estate, although a legal interest neither assignable nor alienable is basically worthless. *See In re Wiggins,* 60 B.R. 89, 93 (Bankr.N.D.Ohio 1986); *Mann v. Kreiss (In re Kreiss),* 72 B.R. 933, 939 (Bankr.E.D.N.Y.1987) (contingent remainder in testamentary trust subject to life tenancy property of the estate under Code § 541(a)(5)(A)). *See also* B. Weintraub & A. Resnick, BANKRUPTCY LAW MANUAL ¶ 4.03[1] (rev. ed. 1986 & Supp.1988). An attack on the validity of a trust excludable under Code § 541, based upon fraud, such as to creditors, must be proven by clear and convincing evidence. *See In re Kreiss, supra,* 72 B.R. at 940. If successful, the trustee in bankruptcy is entitled to obtain possession of the property of the estate from any entity pursuant to Code § 542, whereupon a nonbankruptcy trustee with knowledge of the petition is prohibited from administering or disbursing such property or its proceeds, except as is neces-

sary to preserve the property, under Code § 543. *See also* Bankr.R. 6002; Code §§ 101(10), 541(a)(3).

The Court now turns to the injunctive relief requested in the instant motion. As a court of equity, the bankruptcy court's traditional and inherent power and authority to grant a wide range of injunctive relief is fundamental to and thus limited by the Code. *See Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 108 S.Ct. 963, 968–969, 99 L.Ed.2d 169 (1988); *In re Baldwin–United Corp. Litig.*, 765 F.2d 343, 348 (2d Cir.1985); *Loewi Realty Corp. v. Chanticleer Associates, Ltd. (In re Chanticleer Assoc., Ltd.)*, 592 F.2d 70, 74 (2d Cir.1979) (Act case); 2 COLLIER ON BANKRUPTCY, *supra*, at 105–4. *See also* 28 U.S.C.A. § 1651 (West 1966).

"Since injunctions in bankruptcy cases are authorized by statute, the usual equitable grounds for relief, such as irreparable damage, need not be shown." *In re Neuman, supra*, 71 B.R. at 571 (citing *Henderson v. Burd*, 133 F.2d 515, 517 (2d Cir.1943)). Injunctions against proceedings in state court are appropriate if the proceeding would embarrass, burden, delay, significantly interfere with or otherwise impede or threaten the bankruptcy case. *See Continental Illinois National Bank v. Chicago*, 294 U.S. 648, 675, 55 S.Ct. 595, 605–606, 79 L.Ed. 1110 (1935); *National Labor Relations Board v. Superior Forwarding, Inc.*, 762 F.2d 695 (8th Cir.1985); *Davis v. Sheldon (In re Davis)*, 691 F.2d 176 (3d Cir.1982); *Jaytee–Penndel Co. v. Bloor (In re Investors Funding Corp.)*, 547 F.2d 13, 16 (2d Cir.1976) (citing *Diners Club, Inc. v. Bumb*, 421 F.2d 396, 400–401 (9th Cir.1970)); *LTV Steel Co., Inc. v. Board of Education (In re Chateaugay Corp.)*, 93 B.R. 26, 29 (S.D.N.Y.1988); *C & J Clark Am., Inc. v. Carol Ruth, Inc. (In re Wingspread Corp.)*, 92 B.R. 87, 92 (Bankr.S.D.N.Y.1988); *Johns–Manville Corp. v. Colorado Insurance Guaranty Association (In re Johns–Manville Corp.)*, 91 B.R. 225, 227–228 (Bankr.S.D.N.Y.1988); *Johns–Manville Corp. v. Asbestos Litigation Group (In re Johns–Manville Corp.)*, 26 B.R. 420, 425, *aff'd*, 40 B.R. 219, 226

(S.D.N.Y.), *rev'd in part*, 41 B.R. 926 (S.D. N.Y.1984).

The fact that a Chapter 7 liquidation, rather than a Chapter 11 reorganization, is winding down, and the status of the property as property of the estate is at issue, rendering Code § 362(a) presently inapplicable, does not compel a different result for under Code § 105(a) " '[t]he Court will have ample power to enjoin actions excepted from the automatic stay which might interfere in the rehabilitative process whether in a liquidation or reorganization case.' " *See id.* (quoting 2 COLLIER ON BANKRUPTCY, *supra*, at ¶ 362.05 at 362–43). *See also* 2 COLLIER ON BANKRUPTCY, *supra*, ¶ 105.02 at 105–7. For example, the fact that an outcome in favor of tort claimants in product liability suits against the debtor's insurers would reduce and diminish the insurance fund and thereby adversely affect the debtor's property to the detriment of all its creditors has constituted grounds for an injunction to issue. *See A.H. Robins, Inc. v. Piccinin*, 788 F.2d 994, 1008 (4th Cir.) *cert. denied*, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986).

At the outset, the Court notes that it will take judicial notice of the fact that the "William J. Steffan f/d/b/a Northeast Construction Managers of Delaware & formerly an officer & shareholder of Southeast Construction Managers, Inc. of South Carolina" filed a voluntary petition under Chapter 7 of the Code on December 21, 1987, inasmuch as this was not disputed by any of the defendants in their responses to the Trustee's motion and it is a fact "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Federal Rule of Evidence 201(b). *See also* Bankr.R. 9017; *Annis v. First State Bank of Joplin (In re Annis)*, 78 B.R. 962 (Bankr.W.D.Mo. 1987); *Pruitt v. Gramatan Investors Corp. (In re Pruitt)*, 72 B.R. 436, 440 & n. 4 (Bankr.E.D.N.Y.1987) (relying on Federal Rule of Evidence 201(c)). The Court will also take judicial notice of the Order of Discharge, dated May 5, 1988. *See (id.;)* Russell, *Bankruptcy Evidence Manual*

§ 201.5 (1987 & Supp.1989). The Court observes that in the petition, the Debtor contended that he had an aggregate debt of $779,504.27, $3,800.00 of assets and that in November 1987 he had commenced a suit in a representative capacity against Glazier involving the two trusts. *See In re Annis, supra,* 78 B.R. at 966.

Some very real questions have been raised as to the revocability of the two trust funds comprising over $700,000.00, purported loans made to one or both Trusts pre-petition by the Debtor individually, which were asserted in the sum of $394,-022.00 plus interest by the Debtor five weeks prior to the bankruptcy filing, *Plaintiff's Exhibit 5,* and the scope of the Debtor's powers as settlor on the date of filing, given the Trustee's successor-in-interest status. It is unclear 1) what the corpus of each trust amounts to since no accountings are in evidence, 2) the aggregate amount of the purported loans, 3) whether said loans were made by the Debtor in a representative or individual capacity 4) the viability of any claims based on the alleged loans, 5) whether these purported loans were made to one or both trusts, since the amount claimed in the petition by the Debtor purportedly exceeded the purported res of the William J. Steffan Trust at the time and 6) whether the stipulation on May 2, 1988 settling the matrimonial action dissolved the William J. Steffan Trust and resolved the claims asserted in the petition brought by the Debtor and Timothy Steffan against Glazier. *See Plaintiff's Exhibit 6* (transcript of hearing on May 2, 1988 indicating settlement encompassed all pending actions); *Plaintiff's Exhibit 8* (transcript of hearing on February 8, 1989 indicating the same); *Plaintiff's Exhibit 1* (Separation and Property Settlement Agreement, dated March 14, 1985, contemplating, *inter alia,* dissolution of William J. Steffan Trust following sale of res of real property); *Plaintiff's Exhibit 4* (Final Judgment of Divorce, undated and unsigned, attaching stipulation of November 5, 1987 incorporating March 1985 separation and property settlement agreement); *Plaintiff's Exhibit 7* (Consent to Revocation of Trust signed by Defendant Gloria Steffan October 3, 1988). Neither the testimony of Glazier or Kall clarified these questions and the agreement establishing the WJS Trust is not in evidence.

Moreover, the Court is concerned with the validity of the agreements made post-petition that involved the Trusts, under Code §§ 549(a) and 544, given the property of the estate determination yet to be made. *See, e.g., Argus Management Corp. v. New England Mutual Life Inc. Co. (In re Hillcrest Foods, Inc.),* 31 B.R. 563, 564 (Bankr. D.Me.1983). Additionally, since the Debtor's creditors are not bound by a divorce proceeding to which they are not parties, the Trustee may avoid a transfer of property made under a separation agreement, property settlement or divorce decree, pre or post-petition. *See* Code §§ 547, 548, 549; *Blackwell v. Wallace (In re Wallace),* 66 B.R. 834, 836, 842 (Bankr.E.D.Mo.1986) (Code § 548).

Finally, the Court questions how the Debtor can discharge personal obligations arising in the marital settlement from property he had claimed was not his, through a "carve-out" of certain portions of said trusts as agreed to on May 2, 1988, within 180 days of the filing of his petition. *See Plaintiff's Exhibit 6;* Code §§ 541(a)(5), 549(a); Bankr.R. 1007(h); BANKRUPTCY LAW MANUAL, *supra,* ¶ 4.03[3][c].[1]

Thus, if any of these allegations are substantiated in the underlying adversary proceeding, the purported no-asset Chapter 7 case, ready to be closed, might be transformed, through an infusion of monies from the res of the trust funds or claims

---

**1.** This is premised upon the relevant date for purposes of Defendant Gloria Steffan's entitlement to the $290,220.00 *not* being November 5, 1987, the date of the stipulation reached in state court for settlement of the divorce action, or December 1, 1987, the date Justice Stone signed the Final Judgment of Divorce according to the Attorney's Reply Affidavit she filed and as stated by her counsel at the hearing on February 15, 1989. *Plaintiff's Exhibit 3* (stipulation); *Plaintiff's Exhibit 4* (proposed Final Judgment of Divorce, unsigned and undated). However, if such entitlement did arise pre-petition on either of the above-mentioned dates, then Code §§ 541(a)(1), 547 and 548 would be applicable.

against the trust funds for unpaid loans, and generate significant distributions to the creditor body, of which Defendant Gloria Steffan might presumably number. Aside from the disbursement to Defendant Gloria Steffan potentially constituting an unauthorized priority of payment in her ex-husband's bankruptcy proceeding, *compare* Code § 507 *with* Code §§ 362(b)(2), 502(b)(5), 522(c)(1), 523(a)(5), 1328(a)(2); *see, e.g., In re Palmer, supra,* 78 B.R. at 406, in the event the entire res of both Trusts is determined to be property of the estate, the Court cannot say with certainty that there will be sufficient funds to satisfy any claims for the Debtor's personal loans, succeeded to and asserted by the Trustee, if the disbursement to Defendant Gloria Steffan is made or whether she would have the financial wherewithal to disgorge said disbursement if need be. Her potential inability to repay the disbursement, in a heretofore presumably no-asset Chapter 7 case, would constitute irreparable harm and clear abuse to the creditors of the estate. *See In re Johns–Manville Corp., supra,* 801 F.2d at 68.

Even assuming the trusts are valid and irrevocable and have been properly amended under NYEPTL § 7–1.9 without the Trustee's participation, the Court is troubled by the situation presented herein, where an individual is able to shield over $700,000.00 in trust originally for the benefit of his wife and children and then file for bankruptcy and obtain a discharge of all his debts without apparently generating any creditor dividends. *See In re White, supra,* 851 F.2d at 174; *Robbins v. Webster (In re Webster),* 826 F.2d 293 (4th Cir.1987) (self-settled trust may be part of bankruptcy estate). *See also In re Gifford, supra,* 93 B.R. at 638 (public policy against allowing individuals to place their assets in trust, for their own benefit, and simultaneously shield them from creditors'

claims); NYEPTL § 7–1.4; 61 N.Y.Jur., Trusts § 46 (1968).

Since colorable claims to the Chapter 7 estate's entitlement to at least a portion of the Trusts' res have been asserted, an injunction pursuant to Code § 105(a) is essential in order for the Court to "preserve its ability to make the necessary inquiry" with regard to property of the estate so that it can administer the liquidation of the bankruptcy estate and safeguard the equality of any possible distribution to creditors in accordance with Title 11. *In re Wingspread, supra,* 92 B.R. at 93; *In re Neuman, supra,* 71 B.R. at 573 (finding as to property of estate must be conducted by bankruptcy court).[2] Any other result would impair and perhaps defeat the Court's jurisdiction of the Debtor's bankruptcy case, notwithstanding threatening the integrity of the Code. *See In re Wingspread, supra,* 92 B.R. at 92 (citing cases); *see also In re Davis,* 730 F.2d 176, 184 (5th Cir.1984).

By reason of the foregoing, it is hereby

ORDERED:

1. That the Trustee's motion to enjoin Glazier's disbursement of the sum of $290,220.00 to Defendant Gloria Steffan is granted.

2. That no further disposition of the assets of the William J. Steffan Trust or the WJS Trust by any of the within parties shall be made until the underlying adversary proceeding is adjudicated.

---

**2.** The Court notes that the prudent course of action would have been to seek relief from the automatic stay under Code § 362(a)(2, 3, 6) or a declaration of the applicability of Code § 362(b)(2) when the petition was originally filed in December 1987, which would have brought the property of estate question squarely before the Court early on in the bankruptcy case. *See, e.g., In re White, supra,* 851 F.2d at 170; *In re Wilson, supra,* 85 B.R. at 722; *In re Palmer, supra,* 78 B.R. at 402.