508 F.2d 1226
 UNITED STATES of America, Plaintiff-Appellee,
v.
James Edward DYE, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Willard Eugene CUPP, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
James Harold ERVIN, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Gene GALYON, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
James Sanford BURNETTE, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Glen Lester HUGHES, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Albert Truman COLLINS, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Dale LAMBERT, Defendant-Appellant.
 Nos. 73-1876-73-1883.
 United States Court of Appeals, Sixth Circuit.
 Argued April 9, 1974.
Decided Aug. 22, 1974, As Amended Sept. 12, 1974, Certiorari
Denied March 17,1975, See 95 S.Ct. 1395.
 
 John D. Lockridge, Warren R. Webster, B. Rex McGee (Court Appointed), Charles D. Susano, Jr. (Court Appointed), Roger E. Jenne, Cleveland, Tenn., for appellants; Philip P. Durand, Ambrose, Wilson, Lockridge & Grimm, Bernstein, Dougherty & Susano, Knoxville, Tenn. (of counsel, on briefs).
 Carl P. McDonald, Edward E. Wilson, Asst. U.S. Attys., for appellees; John L. Bowers, Jr., U.S. Atty., on brief.
 Before EDWARDS, CELEBREZZE and LIVELY, Circuit Judges.
 LIVELY, Circuit Judge.
 
 
 1
 On July 27, 1972 a trailer owned by Superior Trucking Services, Inc. was loaded with 1250 cases of Jack Daniels whiskey at a distillery in Lynchburg, Tennessee for delivery to a warehouse in North Carolina. When the driver who was dispatched to pick up the load of whiskey arrived at Lynchburg, the trailer was not there. The empty trailer was found in Monroe County, Tennessee on July 30. Meanwhile, at about 7:00 o'clock in the evening of July 29 two Knox County, Tennessee deputy sheriffs, acting on a tip, went to the area behind a building at 4666 Walker Boulevard in Knoxville and found a padlocked U-Haul truck parked near the rear of the building. Shortly thereafter the chief deputy sheriff of the County joined them and left the other two deputies in the area while he went for a search warrant After the chief deputy returned, a door at the rear of the building at 4666 Walker Boulevard was forced open, and 100 cases of Jack Daniels whiskey were found in the building. The officers then arranged for a truck to be rented and when it was brought to the location, they loaded the whiskey from the building into the truck. This work was completed by about 4:00 a.m. on July 30 and at that time both the U-Haul truck which had remained unopened and the other rental truck which had been loaded with the whiskey from the building were taken to the county jail. The U-Haul truck was delivered to FBI agents unopened and unsearched.
 
 
 2
 The chief deputy sheriff testified that he had a report on the stolen whiskey before he went to the Walker Boulevard address but that the search warrant he obtained was for a stolen outboard motor and not the whiskey. He stated that he had no information on the U-Haul truck when he got the warrant for the outboard motor. The sheriff of Knox County also testified that he went to the rear of the Walker Boulevard address at about 11:30 p.m. on July 29 and that the other officers were inside the building where the whiskey was found. He notified the FBI to determine whether a federal offense had been committed since he had had no official reports of stolen whiskey at that time. After the FBI agents took possession of the U-Haul truck it was moved to a privately owned lot. On July 31 the FBI had a key made for the padlock on the rear of the truck. On August 2 a search warrant was obtained from a federal magistrate on the basis of a detailed affidavit. The truck was searched on August 3, and 416 cases of Jack Daniels whiskey were removed from it. This whiskey was identified as being part of the shipment which was stolen on July 27 or 28.
 
 
 3
 On November 14, 1972 a five-count indictment was returned naming 12 defendants. All of those indicted except the defendant James Edward Dye were charged in count one with a conspiracy to steal the whiskey. A total of 22 overt acts was listed with each of the eleven conspiracy defendants being involved in at least one such act. The second count charged the defendants James Sanford Burnette and James Harold Ervin with the act of stealing and carrying the whiskey away and aiding and abetting each other. In the third count, eight of the defendants were charged with possessing the whiskey with knowledge that it had been stolen. The defendants Collins, Frye and Hales, though charged in the conspiracy, were not included in the charges of counts two or three. The fourth and fifth counts named only the defendant James Edward Dye, who had not been named in any of the first three. In count four, Dye was charged with being an accessory after the fact and in count five, with misprision of felony. The charges against Dye referred to transactions between him and the defendant Steven Eugene McFee which occurred shortly after the theft of the Whiskey.
 
 
 4
 Upon arraignment, all defendants except McFee pled not guilty. McFee pled guilty and gave testimony which implicated the other defendants. At the conclusion of a trial which lasted four days the jury rendered the following verdict:
 
 
 5
 Count 1: Cupp, Galyon, Lambert, Collins, Burnette, Hughes, Ervin and Hales-- guilty; Frye and Lay-- not guilty.
 
 
 6
 Count 2: Burnette and Ervin-- guilty.
 
 
 7
 Count 3: Cupp, Galyon, Burnette, Hughes, Lambert and Ervin-- guilty; Lay-- not guilty.
 
 
 8
 Count 4: Dye-- guilty.
 
 
 9
 Count 5: Dye-- guilty.
 
 
 10
 All who were convicted except the defendant Hales have appealed.
 
 
 11
 At a pretrial hearing, the government stated that it would not rely on any whiskey taken from the premises on Walker Boulevard nor on the search of those premises. It was stipulated that the only whiskey that would be introduced in evidence would be a portion of that taken from the U-Haul truck by the FBI. It was also agreed that all objections by any defense counsel would be treated as made on behalf of all defendants. At the same time, motions for severance were overruled and a hearing was set on a motion to suppress evidence consisting of the whiskey taken from the U-Haul truck.
 
 
 12
 The suppression hearing was held on December 8, 1972 and at the conclusion thereof the court ruled that the defendant Frye (who was subsequently acquitted by the jury) was the only one who had standing to object to the search of the U-Haul truck and seizure of the whiskey. Frye was a service station operator who testified that he had leased the truck on July 29 to a person who identified himself as Douglas White and that the truck had been returned to him the following week by the FBI together with a copy of a search warrant and inventory showing that 416 cases of whiskey were removed from the truck on August 3. Subsequently the court ruled that since Frye had leased the truck he was not a person aggrieved within the meaning of Rule 41(e), Fed.R.Crim.P., and that therefore none of the defendants had standing to suppress the evidence. The court went on to hold that even if the defendants did have standing, there was probable cause for issuance of the search warrant by the United States magistrate and that the FBI search of the U-Haul truck and seizure of the whiskey was not 'tainted' by the previous activities of the state officers.
 
 Sufficiency of the Evidence
 
 13
 In oral argument counsel for the government virtually conceded that there was insufficient evidence to sustain the conviction of defendant Burnette under Count 2. Our examination of the record confirms that the only evidence that Burnette engaged in the actual theft of the whiskey was contained in the confession of the defendant Ervin, and the jury was not permitted to hear those portions of the confession which incriminated other defendants. Upon remand, the charge against Burnette in Count 2 will be dismissed.
 
 
 14
 No attempt will be made to give a detailed statement of the evidence in this case. Although the other defendants claim that they were entitled to acquittal because of failure of the government to prove all elements of the offenses with which they were charged, the record does not support these claims. Following conviction, we view the evidence in the light most favorable to the government. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); United States v. Luxenberg,374 F.2d 241, 248 (6th Cir. 1967). The prosecution sought to establish some elements of the offenses by circumstantial evidence. It is well settled in this jurisdiction that it is not necessary that circumstantial evidence remove every reasonable hypothesis except that of guilt. United States v. Scales, 464 F.2d 371 (6th Cir. 1972). With the exception noted as to Burnette, we find that the evidence introduced by the government, together with the reasonable inferences which may be drawn therefrom, was sufficient to support the verdict of the jury. Much of the argument on sufficiency of the evidence put forward by the defendants relates to credibility and weight, matters which are within the exclusive province of the jury. By pointing out contradictions in the evidence and arguing that the testimony of McFee Fee should not be given great weight, the defendants merely emphasize the fact that the record does contain substantial evidence which supports the verdict.
 
 Time Allotted for Closing Argument
 
 15
 All the defendants also complain that the court limited the time for the closing argument to one hour and forty minutes to the side, which was approximately ten minutes for each defendant. In conference with the attorneys, the court suggested that they apportion the time as they saw fit but told them that if they could not apportion it, the clerk would allow ten minutes to each attorney for the defense. As shown by the fact that seven of the defendants have filed a joint brief in this court, many of the issues in this case were common to several defendants. Thus it was not necessary for each attorney to argue every issue, and the court offered to permit them to divide the allotted time in any way they desired. This is a matter which is left to the discretion of the trial judge, and we find no abuse of discretion.
 
 The Court's Charge to the Jury
 
 16
 Two of the defendants allege error in the failure of the court to give alibi instructions. Burnette and Lambert introduced witnesses who testified as to their whereabouts during a portion of the time when the government witness McFee had testified they were involved in handling the stolen whiskey. The record does not indicate a formal request for an instruction covering these alibi defenses, and at the conclusion of the charge the court noted that it did not believe that 'the alibi business applies. This was a conspiracy charge.' No objection was made to this ruling. The defendant in a criminal case is entitled to instructions on every theory which he puts forward and supports by evidence. Marson v. United States, 203 F.2d 904, 912 (6th Cir. 1953). Even assuming that the defendants porperly brought the alibi theory to the attention of the court, an examination of the testimony of the alibi witnesses discloses that they did not account for the presence of either defendant at a place other than the scene of the activities related to the stolen whiskey in such a way as to preclude the possibility that the defendants were actually there at the times testified to by government witnesses. This is so because the so-called alibi witnesses failed to account for large segments of the critical period of time. We believe that the general charge to the jury adequately protected the rights of these defendants.
 
 Use of Defendant Ervin's Confession
 
 17
 The defendant James Harold Ervin gave a detailed statement to an FBI agent while he was being held in the Rome, Georgia jail on other charges. When the government sought to introduce the statement during trial of this case, there was on objection made out of the hearing of the jury which put in issue the voluntariness of the statement. The court then excused the jury and received the testimony of the FBI agent who had taken the statement from Ervin and Ervin's testimony. Ervin claimed that he gave the statement under duress after the FBI agent had threatened to revoke the probation of Ervin's wife unless he gave a statement about the stolen whiskey. The FBI agent categorically denied making such a threat and testified that he knew nothing about Ervin's family circumstances at the time he took the statement. The court ruled that Ervin's statement was freely and voluntarily given and the FBI agent was permitted to testify concerning the statement. As instructed by the court, the witness did not mention the names of any persons other than Ervin in reciting the contents of the statement, but referred to 'this man,' 'another man' and similar designations with respect to other persons whose activities were recited in the statement.
 
 
 18
 The district court followed the procedure prescribed in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), by hearing the witnesses out of the presence of the jury and making his own determination that the statement of Ervin was voluntary. Furthermore, the court instructed the jury that it was not to consider the confession of Ervin unless it found that the statement was voluntarily given. Actually this instruction was unnecessary since the only objection to admission of the statement was made out of the hearing of the jury and no defendant made an effort to get before the jury any evidence which would put the voluntariness of the statement in issue. United States v. Goss, 484 F.2d 434 (6th Cir. 1973). Our examination of the entire record with respect to the statement of Ervin leads to an independent determination that it was given voluntarily. See Davis v. North Carolina, 384 U.S. 737, 741-742, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966).
 
 Post-Trial Voir Dire of Jury
 
 19
 Shortly after the trial was concluded, the attorney who had represented the defendant Dye was contacted by one of the jurors who intimated that there has been some irregularity in the deliberations of the jury. It was arranged that the attorney would meet the juror at breakfast the next morning and that two other attorneys who had represented defendants in the case would accompany him. The attorney first contacted filed a statement with the court relating these facts and stating that in the conversation the next day the juror indicated that he had been induced to vote 'guilty' with respect to two defendants that he thought were innocent in order to obtain the votes of other jurors to acquit the defendants Frye and Lay. The court called the juror and conducted a hearing in chambers in which the attorney first contacted by the juror, the United States Attorney and the juror were present. The court excluded the other attorneys who had participated in the trial but furnished them with a transcript of the interrogation of the juror. It is now claimed that all of the defendants were entitled to conduct a post-trial voir dire of the entire jury. No such motion appears in the record. The district judge conducted a limited voir dire of the juror who had contacted the attorney and determined that his revelations were not of sufficient gravity to impair the verdict of the jury or to justify further inquiry. Proper functioning of the jury system requires that jurors be free of post-trial inquisition and harassment. See Stein v. New York, 346 U.S. 156, 178, 73 S.Ct. 1077, 97 L.Ed. 1522 (1953). All of the jurors had stated in open court that the verdict in this case was their own verdict, and nothing contained in the affidavit of the attorneys or the limited inquiry of the one juror would have justified a voir dire of the entire jury.
 
 Seizure and Search of the U-Haul Truck
 
 20
 When the state officers took. possession of the U-Haul Truck and drove it to the police station, none of the defendants was present. The police had been in the area for nearly nine hours, and no one had appeared to claim the truck. Though the body of the truck was padlocked, the ignition key was in the cab which was unlocked. The close proximity of the truck to the warehouse, and its apparent abandonment were justification for removing the truck from the public alley at 4:00 a.m. Compare Cady v. Dombrowski, 413 U.S. 433, 442-443, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973). So far as the record shows, none of the defendants except Frye ever claimed any connection with the truck. Without a showing of an interest in the property or the right to control it, they have no standing to suppress the evidence taken from the truck. United States v. Wells, 437 F.2d 1144 (6th Cir. 1971). The defendants cite Mancusi v. DeForte, 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968) for the proposition that one need not claim ownership of the property searched to establish standing However, that decision did not eliminate the requirement that one at least have some possessory interest in the property searched in order to have standing. No such showing was made by any of the defendants.
 
 
 21
 The defendants indicted in count three contend that they have 'automatic' standing to seek suppression of the whiskey taken from the U-Haul truck under the holding of Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). In that case, the Supreme Court noted the dilemma of one accused of a crime in which mere possession is sufficient for conviction. The Court stated:
 
 
 22
 The possession on the basis of which petitioner is to be and was convicted suffices to give him standing under any fair and rational conception of the requirements of Rule 41(e). Id. at 264, 80 S.Ct. at 732.
 
 
 23
 The dilemma referred to in Jones of requiring one to admit possession, and thus incriminate himself, in order to establish standing, was removed by the holding in Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). That case dealt with a non-possessory offense and the Court noted that even in this type case a defendant might be deterred from making a motion to suppress by the fact that his evidence in the suppression hearing would be prejudicial if introduced at his trial. The rule set forth in Simmons, is that--
 
 
 24
 When a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection. Id. at 394, 88 S.Ct. at 976.
 
 
 25
 In Brown v. United States, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973), the Supreme Court did not reach the question of whether the Simmons rule makes the 'automatic' standing doctrine of Jones unnecessary. That question is squarely before us here with respect to the convictions under count three of the indictment because possession is 'an essential element of the offense . . . charged' in that count. Brown v. United States, supra at 228, 93 S.Ct. at 1568. In this case, the motion to suppress was made on behalf of all defendants. Yet only Frye testified at the suppression hearing and his statement showed that he surrendered possession of the truck under a leasing agreement which covered the period when the defendants were charged in count three with illegal possession of the whiskey. The third count of the indictment charges possession of stolen whiskey on or about July 28th. The U-Haul truck was first observed on July 29th, parked in an alley with keys in the ignition. It was not seized until July 30th, following surveillance, and was searched on August 3rd. Thus the defendants convicted under count three were not charged with possession at the time of the contested search and seizure. In Brown, the Supreme Court held:
 
 
 26
 In deciding this case, therefore, it is sufficient to hold that there is no standing to contest a search and seizure where, as here, the defendants: (a) were not on the premises at the time of the contested search and seizure; (b) alleged no proprietary or possessory interest in the premises; and (c) were not charged with an offense that includes, as an essential element of the offense charged, possession of the seized evidence at the time of the contested search and seizure. The vice of allowing the Government to allege possession as part of the crime charged, and yet deny that there was possession sufficient for standing purposes, is not present. The Government cannot be accused of taking 'advantage of contradictory positions.' 411 U.S. at 229, 93 S.Ct. at 1569.
 
 
 27
 There was no direct evidence that any of the defendants except Frye was ever in possession of the U-Haul truck or the whiskey it contained. There was evidence that the defendants were seen in possession of other jack Daniels whiskey while unloading it from the hijacked tractor-trailer into the warehouse. The whiskey taken from the U-Haul truck was part of the same shipment. In the light of Simmons, we do not believe these defendants had automatic standing when they failed to establish some possessory interest in the whiskey or the truck at a hearing where none of their testimony could be used in the subsequent trial. The defendants in this case have not established that they are the ones 'against whom the search was directed' or that they had a right of privacy with respect to the U-Haul truck or its contents. See Jones v. United States, 362 U.S. at 261, 80 S.Ct. at 731. Thus we do not reach the issue of whether actions of the Knox County officers 'tainted' the search which the FBI agents made pursuant to the warrant issued by a federal magistrate.
 
 Use of Previous Statements of Witnesses
 
 28
 Several persons called as government witnesses made answers which apparently conflicted with statements they had previously given to FBI agents. The witnesses were then asked about the previous statements and the defendants objected on the ground that the prosecution could not cross-examine its own witnesses. The district attorney informed the court that the answers surprised him and he was permitted to proceed. It is not clear from the record whether portions of the statements were read to the witnesses or whether the questions were merely based on the statements. Nor does the record reveal that the prosecution knew in advance that the answers of the witnesses would be different from their narrative statements. Having claimed surprise, the prosecuting attorney could properly bring out the prior inconsistent statements of a witness. Necessary foundations as to time, place and circumstances of the previous statements were laid. Under these circumstances it was within the discretion of the trial court whether to permit cross-examination of the prosecution witnesses. Poliafico v. United States, 237 F.2d 97, 108-109 (6th Cir. 1956), cert. denied, 352 U.S. 1025, 77 S.Ct. 590, 1 L.Ed.2d 597 (1957).
 
 
 29
 The defendants Galyon and Cupp were implicated by the out-of-court statement of the witness Dalton and their counsel objected, and when overruled, requested an admonition that the statements could not be considered by the jury unless the FBI agents were produced for a formal confrontation. The court refused to give such an instruction at that time and indicated that it would be included in the charge at the conclusion of proof. The FBI agents who had taken the statements did testify later, but no one questioned them about the out-of-court statement of Dalton. Thus, the right of confrontation claimed by counsel was afforded, but the defendants chose not to pursue the matter.
 
 
 30
 The courts should be alert to prevent abuse of the prior inconsistent statement rule by the prosecution's use of extra-judicial statements in the guise of impeaching witnesses, when the true purpose is to get before the jury substantive evidence which is not otherwise available. See United States v. Crowder, 346 F.2d 1 (6th Cir.), cert. denied, 382 U.S. 909, 86 S.Ct. 249, 15 L.Ed.2d 161 (1965). It is well settled in this jurisdiction that it is error not to give a requested instruction limiting consideration by the jury of an out-of-court statement to impeachment purposes. United States v. Barnes, 319 F.2d 290 (6th Cir. 1963). However, none of the defendants in this case requested an instruction so limiting the Dalton statement, but rather objected on other grounds. In this circuit, failure to give a limiting instruction with respect to the use of extra-judicial statements is plain error. Rule 52(b), Fed.R.Crim.P.; United States v. Lester, 491 F.2d 680 (6th Cir. 1974). However, we conclude in view of the other evidence of guilt of the defendants Galyon and Cupp, that the failure to give an instruction in this case was harmless beyond a reasonable doubt. See Schneble v. Florida, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972); Glinsey v. Parker, 491 F.2d 337 (6th Cir.) cert. denied, 417 U.S. 921, 94 S.Ct. 2630, 41 L.Ed.2d 227 (1974).
 
 The Jencks Act Statements
 
 31
 Prior to trial the prosecution furnished to the defendants eleven statements which the witness McFee had made in connection with the case. After the trial was over the attorneys for the defendants realized that one of the FBI agents had testified on cross-examination that he had participated in securing 19 statements from this witness. A motion was made in the district court for a hearing to determine if the Jencks Act, 18 U.S.C. 3500, had been complied with. The case was on appeal to this court when the motion was made, and the government moved for a remand to the district court for the purpose of holding a hearing to determine if the missing statements were covered by the Jencks Act and, if so, whether any prejudice resulted from failure to produce them. The matter was remanded to the district court where a hearing was held on May 25, 1973. The district judge held that the eight documents were 'statements' within the Jencks Act, but that failure to produce them was not prejudicial.
 
 
 32
 The government argues that failure to produce the eight statements was an oversight and was clearly unintentional and that the eleven statements which were produced were used by the defense for a thorough and vigorous cross-examination of McFee. While admitting that all of the interviews with McFee are 'statements' covered by the Jencks Act, the government would have us treat its failure to produce them as harmless error. The eight statements which were not produced would have provided little if any additional material for cross-examination by counsel for defendants. In one-- a recording of a telephone conversation-- there is an ambiguous reference to the fact that 'Jim' was not worried because he had done nothing wrong. Each of the three defendants whose given name is James claims prejudice from the government's failure to produce this transcript at the trial. We hold that the finding of the district court that there was no prejudice to the defendants as the result of the failure of the prosecution to produce the eight statements was not clearly erroneous. United States v. Chitwood, 457 F.2d 676, 678 (6th Cir.), cert. denied, 409 U.S. 858, 93 S.Ct. 141, 34 L.Ed.2d 103 (1972).
 
 The Severance Issue
 
 33
 The defendants filed motions for severance, claiming that they were entitled to separate trials so that each could call as witnesses the other defendants who had made statements. This they could not do in the joint trial in which the persons giving the statements were co-defendants. The brief refers particularly to the statement of the defendant Ervin mentioned earlier in this opinion contending that the other defendants were denied their right of effective confrontation by being tried jointly with Ervin. As we have pointed out, the jury was not permitted to knew the identify of anyone referred to in the Ervin statement. We believe that the trial court correctly ruled that the other defendants were not implicated by this statement and that the joint trial did not violate their constitutional right to confront witnesses against them. Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).
 
 
 34
 A motion under Rule 14, Fed.R.Crim.P., for relief from prejudicial joinder is directed to the sound discretion of the trial court and denial of severance is not grounds for reversal in the absence of an abuse of discretion. Opper v. United States, 348 U.S. 84, 95, 75 S.Ct. 158, 99 L.Ed. 101 (1954); United States v. Vaughan, 422 F.2d 812 (6th Cir. 1970); United States v. Morgan, 394 F.2d 973 (6th Cir.), cert. denied, 393 U.S. 942, 89 S.Ct. 310, 21 L.Ed.2d 279 (1968). It was pointed out in United States v. Echeles, 352 F.2d 892 (7th Cir. 1965), that the general rule in conspiracy cases is that persons jointly indicted should be tried together and that this is particularly true where the offenses charged may be established against all of the defendants by the same evidence and which result from the same series of acts. The defendants other than Dye do not contend that joinder was improper under Rule 8, Fed.R.Crim.P., but only that it was prejudicial and that severance should have been ordered under Rule 14. The Court of Appeals for the Seventh Circuit considered such a claim in United States v. Rogers, 475 F.2d 821 (1973), where it stated at page 828:
 
 
 35
 Joinder being proper, this court will reverse the trial court only if abuse of discretion is shown. The trial court is to balance possible prejudice to the defendant from joinder with the public interest in efficient use of judicial time through joint trial of defendants and offenses which are connected. In a case of multiple defendants, as the instant one, the showing needed for severance appears to be stronger than in a case of a single defendant with multiple counts. See Wright and Miller, Federal Practice and Procedure 223 (1969).
 
 
 36
 We find no abuse of discretion in the denial of severance to the defendants named in the first three counts of the indictment.
 
 
 37
 The defendant Dye charges that Rule 8(b) of the Federal Rules of Criminal Procedure was violated by charging him in the same indictment with the other defendants. It is his position that he was not alleged to have participated in the same 'act or transactions' or 'in the same series of acts or transactions' constituting an offense or offenses as the other defendants named in the indictment. Dye was not charged with being a member of the conspiracy or committing any of the overt acts in furtherance of the conspiracy. It was alleged that he was an accessory after the fact because of assistance he gave the defendant McFee in changing his appearance and that he was guilty of misprision of felony in concealing the hijacking of the whiskey and not reporting it to proper authorities. The most important evidence against him was the testimony of the co-defendant McFee, just as McFee's testimony was basic to making out the case against all of the defendant. The fourth and fifth counts of the indictment refer specifically to McFee's possession of the stolen whiskey which is the subject of the third count of the indictment. We believe that the joinder of defendants was proper in this case because the indictment charged them separately with participation in 'the same series of acts or transactions constituting . . . offenses.' Although Dye was named in only two counts, this is not a case such as United States v. Reynolds, 489 F.2d 4 (6th Cir. 1973), where the indictment alleged no connection between the acts of a defendant named in one count and those of a defendant named in another. The indictment charged in count three that McFee was guilty of knowingly possessing property which had been stolen from an interstate shipment and counts four and five charged that Dye's illegal activities occurred at a time when he knew of McFee's commission of the offense charged in count three. The joinder of Dye in counts four and five did not violate Rule 8(b), and we find no abuse of discretion in the trial court's denial of severance.
 
 
 38
 One other claim of error should be dealt with here since it concerns the indictment. Dye claims that counts four and five of the indictment are 'duplicitous because the proof necessary for conviction of the accessory charge and for misprision of felony is identical and the offenses are not distinct. The same evidence may result in conviction of more than one offense if each such offense requires proof of a fact which the others do not. United States v. Barnett, 418 F.2d 309 (6th Cir. 1969). This test is satisfied with respect to the separate charges of being an accessory after the fact and misprision of felony. United States v. Daddano, 432 F.2d 1119, 1129 (7th Cir. 1970), cert. denied, 402 U.S. 905, 91 S.Ct. 1366, 28 L.Ed.2d 645 (1971).
 
 
 39
 The judgment of the district iourt is affirmed except with respect to the convction of the defendant Burnette under Count 2 of the indictment. The conviction of Burnette under Count 2 is reversed and it is directed that this charge be dismissed.