NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0747n.06
Filed: October 19, 2007

Case Nos. 05-5240, 05-5712, 05-5629, 05-6569, 05-5785, 05-5628

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| KIVETTE SMITH, NICHOLAS CLAY, | ) | DISTRICT OF TENNESSEE |
| GARLAND S. SLADE, MARQUIS | ) | |
| TOWNSEND, CLAYTON WILKINS, and | ) | |
| LEKO JONES, | ) | |
| | ) | |
| Defendants-Appellants. | ) | |
| | ) | |

BEFORE: BOGGS, Chief Judge, BATCHELDER, and GRIFFIN, Circuit Judges.

ALICE M. BATCHELDER, Circuit Judge. Defendants Kivette Smith, Nicholas Clay,

Garland Slade, Marquis Townsend, Clayton Wilkins, and Leko Jones appeal their convictions and

sentences arising from their participation in a drug conspiracy. Each of these defendants was

charged in a 37-count federal indictment with conspiring to distribute and possess with intent to

distribute 50 grams or more of crack cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846,

from February 2001 to on or about September 23, 2003. Additionally, the indictment charged

Wilkins with four substantive drug offenses; Jones with seven substantive drug offenses; Clay with

four substantive drug offenses; and Slade with two substantive drug offenses.

Prior to trial, Smith and Townsend pled guilty to Count One pursuant to a plea agreement.

Clay, Slade, Wilkins, and Jones, however, proceeded to trial. The jury convicted all four on the

conspiracy count, and convicted Wilkins on all four substantive drug charges, Jones on six of his seven substantive drug charges, Clay on three of his four substantive drug charges, and Slade on one of his two substantive drug charges. Following sentencing, all six defendants timely appealed various aspects of their convictions and sentences. For the following reasons, we AFFIRM the defendants' convictions and sentences.

## I. ANALYSIS

### A. Convictions

#### 1. Sufficiency of the evidence on the conspiracy charge

Wilkins and Jones challenge the sufficiency of the evidence supporting their convictions on Count One, the drug conspiracy charge. We review a challenge to the sufficiency of the evidence to determine "'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond any reasonable doubt.'" *United States v. Hill*, 142 F.3d 305, 311 (6th Cir. 1998) (quoting *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (emphasis in original)).

In order to establish a conspiracy under 21 U.S.C. § 846, "the government must prove, beyond a reasonable doubt, '(1) an agreement to violate drug laws, (2) knowledge and intent to join the conspiracy, and (3) participation in the conspiracy.'" *United States v. Gibbs*, 182 F.3d 408, 420 (6th Cir. 1999) (citation omitted). The government presented numerous witnesses whose testimony established that Wilkins and Jones worked together and with others to bring crack cocaine into Johnson City, Tennessee, break it up for resale, and sell it on the street. After reviewing the record, we conclude that it contains ample evidence to permit a rational juror to find beyond a reasonable doubt that the government established a conspiracy to distribute or possess with intent to distribute

2

50 grams or more of crack cocaine.

Moreover, neither Jones nor Wilkins argues that the testimony, if believed, was insufficient to support his conspiracy conviction; rather, both defendants focus on the witnesses' credibility, asserting that the government's evidence rested almost exclusively on the testimony of paid confidential informants and cooperating co-defendants, who testified for the government in hopes of receiving a reduced sentence — or "lies generated by liars who were bent on saving themselves." "[Jones's and Wilkins's] argument here is merely a challenge to [the witnesses'] credibility, packaged as an insufficiency of the evidence claim," *United States v. Talley*, 164 F.3d 989, 996 (6th Cir. 1999), and "attacks on witness credibility are simple challenges to the *quality* of the government's evidence and *not the sufficiency* of the evidence." *United States v. Paige*, 470 F.3d 603, 608 (6th Cir. 2006) (emphasis added) (internal punctuation and citation omitted). These challenges are meritless.

### 2. Clay's Motion to Sever

Prior to and during trial, Clay moved to sever his trial from that of his co-defendants, arguing that he would be prejudiced by the government's evidence concerning the large quantity of crack cocaine involved in the conspiracy. The court denied his motions. Clay then moved for a mistrial on the grounds that the evidence presented at trial indicated multiple conspiracies, not the single conspiracy charged in Count One, and the evidence relating to the large quantity of crack involved unfairly prejudiced Clay. The court denied the motion. Clay renewed his motion for a mistrial without success.[1]

---

[1]On appeal, Clay provides neither legal argument nor support for his claim that the district court abused its discretion when it denied the motion for a mistrial, saying only that by granting the motion, the district court could have corrected its error in denying the motions to sever. Issues raised in a perfunctory manner are deemed waived.

We review for abuse of discretion the district court's denial of Clay's motions to sever. *United States v. Dye*, 508 F.2d 1226, 1236 (6th Cir. 1974). An indictment "may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." FED. R. CRIM. P. 8(b). We have recognized that, generally, in conspiracy cases, "persons jointly indicted should be tried together and that this is particularly true where the offenses charged may be established against all of the defendants by the same evidence and which result from the same series of acts." *Dye*, 508 F.2d at 1236. But the court may sever a defendant's trial if the joinder of defendants appears to prejudice that defendant. FED. R. CRIM. P. 14(a).

Clay argues that because the indictment charged him with four substantive drug offenses relating to actual distribution during the period September 25, 2002, through October 29, 2002, of amounts totaling less than 3.1 grams, he was unfairly prejudiced with regard to the conspiracy count by the government's introduction of the large quantity of crack distributed by all of the parties as part of the overall conspiracy lasting from February 2001 to September 2003. We have found, however, that "a defendant is not entitled to severance simply because the evidence against a co-defendant is far more damaging than the evidence against him." *United States v. Beverly*, 369 F.3d 516, 534 (6th Cir. 2004) (internal punctuation and citation omitted). "Moreover, a defendant does not have a right to a separate trial, merely because his likelihood of acquittal would be greater if severance were

---

*See United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996). In any event, the district court did not abuse its discretion in denying Clay's motion for a mistrial. "[A] single conspiracy does not become multiple conspiracies simply because each member of the conspiracy did not know every other member, or because each member did not know of or become involved in all of the activities in furtherance of the conspiracy." *United States v. Warner*, 690 F.2d 545, 549 (6th Cir. 1982). Moreover, "the agreement may continue for a long period of time and may include the performance of many transactions" and "[n]ew parties may join the agreement . . . while others may terminate their relationship." *Id.* at n.7 (citation omitted). The evidence here supported a single conspiracy.

4

granted." *Id.* Instead, Clay "must show compelling, specific, and actual prejudice" from the district court's refusal to sever, *United States v. Saadey*, 393 F.3d 669, 678 (6th Cir. 2005), and must demonstrate that the jury cannot separate and treat distinctively the evidence relevant to each particular defendant, *see United States v. Moore*, 917 F.2d 215, 220 (6th Cir. 1990).

Clay has not shown he was actually prejudiced or that the jury was unable to review the evidence concerning Clay, individually, within the context of the conspiracy charging 50 grams or more of crack cocaine. In fact, the jury acquitted Clay of one of his four substantive drug charges. The district court did not abuse its discretion in denying the motion to sever.

### 3. Pre-trial discovery order

Slade argues that the government violated a pre-trial discovery order when it failed to turn over to him government agents' rough notes of statements made by Slade's co-defendants. Slade points to the "Motion for Modification of Discovery Order to More Fully Conform with Current Requirements of Rule 16" filed by his co-defendant Clay in which Slade was permitted to join, and in which Clay sought to compel the government to supply agents' "rough notes" as a part of the disclosures required under Rule 16(a)(1)(B)(ii) of the Federal Rules of Criminal Procedure. The magistrate judge denied Clay's motion. Clay appealed this denial to the district court which granted his appeal and ordered the government to "produce any agent's rough notes of *any defendant's* statement." (Emphasis added.)

Slade argues that the district court's order means that the government should have turned over to him not only notes relating to his own statements but also any rough notes relating to statements made by his co-defendants. He contends that the rough notes relating to his co-defendants may contain exculpatory information material to his guilt or innocence, i.e., that he was

5

not involved in the conspiracy and/or that he was at most an occasional buyer. And Slade contends that he did not receive any rough notes at all from the government.

Rule 16(a)(1)(B)(ii) directs the government, upon Slade's request, "to disclose *to the defendant*, and make available for inspection, copying, or photographing, all of the following: . . . (ii) the portion of any written record containing the substance of any relevant oral statement made before or after arrest *if the defendant* made the statement in response to interrogation by a person the defendant knew was a government agent." (Emphasis added). The government argues that Rule 16(a)(1)(B)(ii) applies only to Slade's own statements and does not entitle Slade to the statements of his co-defendants, the language of the district court's order notwithstanding.

We agree with the government. Moreover, we consider the context in which the district court granted this order. The magistrate judge had already granted Slade's request to join in Clay's motion, and the court simply — albeit somewhat inartfully — granted Clay's motion on behalf of "any defendant." In short, we do not read the district court's order as requiring that the government provide to any defendant the rough notes of statements of any other defendant.

### 4. Slade's pro se arguments

Slade raises a number of arguments in his pro se brief that he did not present to the district court: (1) the indictment was duplicitous as to Count One; (2) the district court's failure to provide buyer-seller and multiple conspiracy jury instructions; and (3) the indictment was defective as to Count One because it did not indicate the identity of every alleged co-conspirator. We review these claims for plain error, and after carefully reviewing Slade's arguments and the relevant case law, we find none. Count One of the indictment was not duplicitous; the evidence did not support the jury instructions requested by Slade; and the indictment was not defective as Slade claims.

6

Slade also claims that his trial counsel was ineffective in several respects. We decline to address this claim at this time. *See United States v. Sullivan*, 431 F.3d 976, 986 (6th Cir. 2005) ("The usual rule is that a defendant may not raise claims for ineffective assistance of counsel on direct appeal."). Having preserved this claim, Slade may pursue it in a post-conviction proceeding under 28 U.S.C. § 2255.

**B.      Sentencing**

At sentencing, the district court must impose "a sentence sufficient, but not greater than necessary, to comply with the purposes" of 18 U.S.C. § 3553(a)(2), *see United States v. Foreman*, 436 F.3d 638, 644 n.1 (6th Cir. 2006) (quoting 18 U.S.C. § 3553(a)), and, on appeal, we review the district court's sentence for reasonableness. *Rita v. United States*, 127 S. Ct. 2456, 2459 (2007); *Booker v. United States*, 543 U.S. 220, 261 (2005). We afford a presumption of reasonableness to a properly calculated within-Guidelines sentence. *See United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006); *see also Rita*, 127 S. Ct. at 2462 (holding that "a court of appeals may apply a presumption of reasonableness to a district court sentence that reflects a proper application of the Sentencing Guidelines").

"A sentence may be procedurally unreasonable if 'the district judge fails to "consider" the applicable Guidelines range or neglects to "consider" the other factors listed in 18 U.S.C. § 3553(a), and instead simply selects what the judge deems an appropriate sentence without such required consideration.'" *United States v. Ferguson*, 456 F.3d 660, 664 (6th Cir. 2006) (quoting *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005)). While we have consistently required district courts to consider § 3553(a)'s factors, procedural reasonableness "does not require a rote listing," *United States v. Collington*, 461 F.3d 805, 809 (6th Cir. 2006), or a "'ritual incantation' of the

7

factors," *Williams*, 436 F.3d at 709 (quoting *United States v. Johnson*, 403 F.3d 813, 816 (6th Cir. 2005)), so long as the court provides "sufficient evidence in the record to affirmatively demonstrate [its] consideration of [the factors]." *United States v. Davis*, 458 F.3d 505, 510 (6th Cir. 2006) (citation and internal punctuation omitted). That is, "[t]he sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Rita*, 127 S. Ct. at 2468.

"'[E]ven if a sentence is calculated properly, i.e., the Guidelines were properly applied and the district court clearly considered the § 3553(a) factors and explained its reasoning, a sentence can yet be unreasonable.'" *United States v. Husein*, 478 F.3d 318, 332 (6th Cir. 2007) (quoting *United States v. Cage*, 451 F.3d 585, 591 (10th Cir. 2006)). A sentence may be "substantively unreasonable where the district court 'select[s] the sentence arbitrarily, bas[es] the sentence on impermissible factors, fail[s] to consider pertinent § 3553(a) factors, or giv[es] an unreasonable amount of weight to any pertinent factor.'" *Ferguson*, 456 F.3d at 664 (quoting *Webb*, 403 F.3d at 385).

We begin with two preliminary observations. First, because none of the defendants objected to any perceived procedural inadequacy at sentencing, even though the district court provided the opportunity for each of them to raise such an objection, we review for plain error any challenge these defendants make to the procedural reasonableness of their sentences. *United States v. Bailey*, 488 F.3d 363, 367 (6th Cir. 2007) ("[W]hen the district court asks at sentencing whether there are any objections to the sentence and the appellant raises none, we review the [procedural reasonableness of the] sentence only for plain error."). And second, the sentence of each of these defendants falls within the advisory Guidelines range; therefore, so long as the district court properly calculated the respective Guidelines range, we afford a rebuttable presumption of reasonableness to the sentences

8

imposed.

**1. Smith**

a. Plea agreement

Smith argues that the government breached his plea agreement by failing to advise the district court of Smith's cooperation with the government. Paragraph eight of the plea agreement provides that "[a]t the time of sentencing, the United States will bring to the court's attention the nature, extent, and value of the defendant's cooperation." Because Smith failed to object at sentencing when the government did not offer any statement as to his cooperation, he forfeited "his right to appeal any breach of the plea agreement, and a plain error analysis thus guides this Court's review." *United States v. Barnes*, 278 F.3d 644, 646 (6th Cir. 2002). We find no such error.

The sentencing memorandum Smith filed in the district court does not describe his cooperation with the government, but notes only that "the extent and nature of the cooperation will be made known to the Court in its consideration of any Motion for Downward Departure filed by the government." The government's sentencing memorandum does not mention any cooperation by Smith or suggest that his sentence should be reduced because of his cooperation. And Smith does not suggest on appeal that he in fact did cooperate with the government. He claims only that the government's failure expressly to address the issue at sentencing is a breach of the plea agreement.

Smith's plea agreement contains no express agreement on the part of the government to make any recommendation as to Smith's sentence or to move for a downward departure. Rather, the agreement obligated the government to advise the court of any cooperation by Smith, and provided that the government, in its sole discretion, would determine whether to move for a downward departure on the basis of any substantial assistance Smith might provide to the government. Because

9

Smith points to no cooperation, we cannot find that the government had anything to bring to the court's attention at sentencing. We therefore find that Smith has demonstrated no breach of the plea agreement and no plain error.

b. Smith's sentence

The district court sentenced Smith to 262 months' imprisonment, a sentence within the Guidelines. Smith argues that the district court erred by treating the Guidelines as mandatory and failing to consider relevant § 3553(a) factors.

Smith's claim that the district court treated the Guidelines as mandatory is patently wrong, as the record clearly reflects that the district court was aware of the advisory nature of the Guidelines. And while the district court did not expressly examine all of the § 3553 factors or explicitly discuss each of them with respect to Smith, we do not require such a mechanical exercise. *See Collington*, 461 F.3d at 809. The court sentenced Smith to the lowest sentence within the Guidelines range, and noted that the Guidelines range was driven in large part by Smith's status as a career offender. Here, the "[c]ircumstances . . . make clear that the judge rest[ed] his decision upon the Commission's own reasoning that the Guidelines sentence is a proper sentence (in terms of § 3553(a) and other congressional mandates) in the typical case, and that the judge . . . found that the case before him [wa]s typical." *Rita*, 127 S. Ct. at 2468. Smith's claim that his sentence is procedurally unreasonable is meritless.

**2. Townsend**

The district court sentenced Townsend to 188 months' imprisonment, a sentence within the Guidelines. Townsend argues that the sentence is procedurally unreasonable because the court gave too much weight to the Guidelines range, erred in its consideration of Townsend's criminal history,

and failed to consider mitigating factors. He argues that his sentence is substantively unreasonable because it is too long (1) in light of the mitigating factors he presented at sentencing and (2) in comparison to Clay's sentence.

Here, the court considered the Guidelines[2], Townsend's nature and characteristics, and his cooperation with the government. The "[c]ircumstances . . . make clear that the judge rest[ed] his decision upon the Commission's own reasoning that the Guidelines sentence is a proper sentence (in terms of § 3553(a) and other congressional mandates) in the typical case, and that the judge . . . found that the case before him [wa]s typical." *Rita*, 127 S. Ct. at 2458. Here, the court provided sufficient evidence in the record to demonstrate affirmatively its consideration of the § 3553(a) factors and did not "simply select" what it viewed as "an appropriate sentence." *Ferguson*, 456 F.3d at 664.

With respect to the mitigating factors Townsend raised, the court adequately addressed the factors and explained why those factors did not dictate a downward departure from the Guidelines. *See Rita*, 127 S. Ct. at 2468 ("Where the defendant . . . presents nonfrivolous reasons for imposing

---

[2]At each defendant's sentencing hearing, the district court made some reference to the "substantial weight" or "significant weight" it accorded the advisory Guidelines range, noting that the United States Sentencing Commission had taken into account all or most of the factors set forth in Section 3553(a) in arriving at the guideline recommendation. The defendants argue that the district court's view of the Guidelines "re-institute[s] mandatory adherence to the Guidelines." The Supreme Court, however, has now made it clear that a district court may accord substantial weight to the Guidelines in determining a sentence:

> it is fair to assume that the Guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives. An individual judge who imposes a sentence within the range recommended by the Guidelines thus makes a decision that is fully consistent with the Commission's judgment in general.

*Rita*, 127 S. Ct. at 2464-65. The Supreme Court, therefore, has recognized that the district court and Sentencing Commission are working toward the same objective: applying § 3553 factors to arrive at a sentence sufficient, but not greater than necessary, to comply with the purposes of 18 U.S.C. § 3553(a)(2). "[W]hen the judge's discretionary decision accords with the Commission's view of the appropriate application of § 3553(a) in the mine run of cases, it is probable that the sentence is reasonable." *Id*. at 2465.

11

a different sentence, however, the judge will normally go further and explain why he has rejected those arguments."). Moreover, "[t]he record makes clear that the sentencing judge listened to each argument. . . . [and] considered the supporting evidence . . . . The judge then simply found [Townsend's] circumstances insufficient to warrant a sentence lower than the Guidelines range." *Id.* at 2469.

On appeal, Townsend argues that because, like Clay, he presented evidence of a family history of abuse and argued disparity between powder cocaine and crack cocaine, his sentence should be more like Clay's. This claim is meritless. First, the district court properly did *not* address the issue of the sentencing disparity between powder cocaine and crack cocaine. Congress has determined that the differences between powder cocaine and crack cocaine mandate different sentences, *see* 21 U.S.C. § 841(b), and as we recently stated in *United States v. Funk*, 477 F.3d 421 (6th Cir. 2007), a sentencing court may not reject Congress's policy decisions. 477 F.3d at 430 ("[A] district court making sentencing determinations may not implicitly reject Congress's policy decision to prescribe harsher penalties for career offenders by ignoring or outright rejecting a defendant's status as a career criminal offender.").

Second, Townsend's argument that his sentence is unreasonable because, like Clay, Townsend also had a difficult childhood but, unlike Clay, Townsend has a bipolar disorder, is also baseless. The very essence of sentencing is rendering a punishment sufficient, but not greater than necessary for this *particular individual* with respect to his particular offenses. Although Clay's sentence is not before us, it is clear from the record that Clay's circumstances are different from Townsend's circumstances. For example, the district court found that Clay withdrew from the conspiracy and led a productive life for one year prior to his arrest in this case. There is no evidence

12

in the record that Townsend raised a similar argument before the district court, nor, on appeal, has he even suggested that he withdrew from the conspiracy. In short, the district court's decision to sentence Townsend to 188 months as opposed to Clay's 156 months does not render Townsend's sentence unreasonable.

### 3. Wilkins

The district court sentenced Wilkins to 188 months' imprisonment, a sentence within the Guidelines. Wilkins argues that his Guidelines range should have been based upon the quantity of crack cocaine reflected in the jury's verdict, rather than the drug quantity calculated in the presentence investigation report ("PSR"). The jury convicted him of conspiracy to distribute 50 grams or more of crack cocaine; the base offense level for 50 grams but not more than 150 grams is 32. The probation officer, however, calculated his sentence based upon 255 grams of crack cocaine, resulting in an offense level of 34. Wilkins objected to the PSR's drug quantity calculation. The court sentenced him to 188 months, the lowest sentence in the Guidelines range based upon 255 grams, and the highest in the Guidelines range based upon 150 grams of crack cocaine.

Wilkins argues that the district court calculated his Guidelines range on the basis of facts other than those which he specifically admitted or the jury found, thus violating *Booker*. "Because the guidelines are now advisory and not mandatory, a District Court may rely on extra-verdict facts or on those other than which the defendant has specifically admitted when it calculates his sentence." *United States v. Cook*, 453 F.3d 775, 777 (6th Cir. 2006). "Moreover, *Apprendi* [*v. New Jersey*, 530 U.S. 466 (2000)] is not triggered so long as the judicial findings of fact do not result in the defendant receiving a sentence that exceeds the statutory maximum." *United States v. Flores*, 477 F.3d 431, 438 (6th Cir. 2007). This claim is meritless.

Wilkins also argues that his sentence was procedurally and substantively unreasonable because the trial court failed to consider adequately the § 3553(a) factors in rendering his sentence and gave too much weight to the Guidelines. The record, however, reflects that the court in fact considered both the advisory Guidelines and the § 3553(a) factors. The "sentencing judge . . . set forth enough to satisfy [us] that he . . . considered the parties' arguments and ha[d] a reasoned basis for exercising his own legal decisionmaking authority." *Rita*, 127 S. Ct. at 2468. Moreover, the court considered factors weighing in Wilkins's favor, but "simply found these circumstances insufficient to warrant a sentence lower than the Guidelines range." *Id*. at 2469. Wilkins has shown no error with regard to the procedural reasonableness of his sentence, let alone plain error. Finally, the district court did not base the sentence on impermissible factors or give unreasonable weight to any pertinent factor, *Ferguson*, 456 F.3d at 664, and Wilkins's claim that the sentence is substantively unreasonable is meritless.

**4. Jones**

Jones first argues that the district court erred in its calculation of the advisory Guidelines range because it assessed Jones four points for two of Jones's juvenile convictions. Because Jones did not object to this calculation in the PSR or at sentencing, we review it for plain error. *United States v. Dossie*, 188 F. App'x 339, 346 (6th Cir. 2006).

Section 4A1.2(d)(2)(A) of the 2003 Guidelines provides that the defendant receives two (2) points "for each . . . juvenile sentence to confinement of at least sixty days if the defendant was released from such confinement within five years of his commencement of the instant offense." The district court adopted the PSR which awarded (1) two points for Jones's June 30, 1995, conviction for having a weapon on campus or other educational property and (2) two points for Jones's August

14

11, 1995, conviction for assault with a deadly weapon. On October 27, 1995, when the juvenile court sentenced Jones for these two offenses, the court committed him to North Carolina's Division of Youth Services for a period not to extend beyond his 18th birthday. He was released from this confinement on January 1, 1998.

Juvenile commitments are properly determined to be "confinement" for purposes of 4A1.2(d)(2)(A)). *See*, *e.g.*, *United States v. Maurice Williams*, 176 F.3d 301, 312 (6th Cir. 1999). Jones offers no factual or legal basis for his contention that these convictions should not have been counted in his criminal history. Indeed, Jones provides no argument whatsoever with regard to this claim, but merely raises the issue in the heading of a section of his brief and then recites the facts of his juvenile convictions.[3] Issues raised in a perfunctory manner are deemed waived. *See United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996).

Jones further complains — but favors us with neither law nor argument in support — that his sentence is unreasonable because it is not less than the applicable advisory Guidelines range and the "sentence does not fit the crime." The district court sentenced Jones to 327 months' imprisonment, a sentence within the Guidelines. The record reflects that the court considered the advisory Guidelines and addressed extensively the § 3553(a) factors. The court imposed a sentence at the high end of the Guidelines range because of Jones's lengthy criminal history and the court's belief that Jones was not amenable to rehabilitation and the public needed to be protected from him. The record demonstrates that the court addressed Jones's mitigating factors and explained why it

---

[3]At best, Jones may be arguing that because he was released from confinement on January 1, 1998, and the grand jury indicted him on September 23, 2003 — more than five years after his release from confinement — the juvenile convictions should not be counted. This contention would be clearly incorrect. Under Section 4A1.2(d)(2)(A), the five-year period runs from the date of release to the date of the *commencement of the "instant offense."* The instant offense here included seven substantive drug charges, four of which fell within the five-year period.

rejected them in calculating the sentence, and that the court did not arbitrarily select the sentence, give undue weight to pertinent factors, or base the sentence on impermissible factors. *See Ferguson*, 456 F.3d at 664. This sentence is neither procedurally nor substantively unreasonable.

**5. Slade**

The district court sentenced Slade to a mandatory term of life imprisonment. Slade first argues that the district court erred by finding that his 1997 North Carolina felony conviction for possession of cocaine qualified as a "felony drug offense" within 21 U.S.C. § 841(b)(1)(A) and 21 U.S.C. § 802(44). Section 841(b)(1)(A) provides that a defendant who violates § 841 "after two or more prior convictions for a felony drug offense have become final, . . . shall be sentenced to a mandatory term of life imprisonment without release." 21 U.S.C. § 841(b)(1)(A). Section 802(44) defines a "felony drug offense" as "an offense that is *punishable* by imprisonment for *more than one year* under any law of . . . a State . . . that prohibits or restricts conduct relating to narcotic drugs . . . ." 21 U.S.C. § 802(44) (emphasis supplied).

Slade argues on appeal that the maximum sentence he could have received for his 1997 North Carolina conviction, a Class I felony, was 12 months, and he argues persuasively that, because the conviction could qualify as a felony drug offense only with a finding of aggravated factors — which are not in the record — the conviction was erroneously utilized by the district court as a predicate for the life sentence. But Slade waived this argument before the district court, explicitly conceding that the 1997 conviction was a predicate conviction for purposes of enhancing his sentence under 21 U.S.C. §§ 841(b)(1)(A), 802(44). As the Supreme Court noted in *United States v. Olano*, 507 U.S. 725 (1993), "[w]aiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known

16

right.'" 507 U.S. at 733 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).

In his sentencing memorandum, Slade's counsel stated

> Counsel believed that an argument could be made on good faith that Mr. Slade's 1997 conviction for possession of cocaine was, in fact, a misdemeanor rather than a felony.  However, after researching North Carolina law, it was discovered that the cases that Mr. Slade would have relied upon were overturned by the North Carolina Supreme Court on June 25, 2004.  *State v. Jones*, 358 N.C. 473 (June 25, 2004) (holding that possession of cocaine is a felony under N.C.G.S. § 90-95(d)(2) for the purposes of establishing that the defendant is a habitual offender in sentencing for subsequent convictions).

Moreover, at Slade's April 14, 2005, sentencing hearing, the district court said, "I quite frankly looked for a way to avoid imposition of a mandatory life sentence here, but I can't find it."  Slade's counsel responded:

> I know you did, your Honor.  I actually was looking at that this morning.  I know you tried.  This is my second mandatory life I received in a year in this court, and I was very — we worked tirelessly to try and figure out a way to get one of the North Carolina convictions overturned.  There was an issue initially. . . . Your Honor, there's nothing else I can say.  Obviously, I think Congress has made a mistake by putting a life sentence on these types of crimes.  All we have is two felony drug convictions and a conviction before this court. . . . In this case, he's receiving a much more serious sentence today, your Honor; but under the statute there's just nothing I can do.

We conclude that Slade did not merely forfeit this challenge to the Guidelines calculation and the resulting life sentence, he waived his right to contest the district court's disposition of this matter. We therefore cannot consider it. *See United States v. Obi*, 193 F. App'x 453, 455 (6th Cir. 2006) ("When a party intentionally relinquishes or abandons a known right in the district court, the claim is waived and cannot be asserted on appeal." (citing *Olano*, 507 U.S. at 733)).

Slade next argues that the mandatory life sentence imposed by the district court is cruel and unusual punishment and violates the Eighth Amendment.  Because Slade did not raise his Eighth

Amendment claim before the district court, we review it for plain error. *United States v. Murillo-Monzon*, No. 06-1776, 2007 U.S. App. LEXIS 17778, at *6 (6th Cir. July 18, 2007) ("Where the defendant fails to raise his or her constitutional challenges in the district court, however, we will grant relief only if the defendant demonstrates plain error.").

In *United States v. Hill*, 30 F.3d 48 (6th Cir. 1994), we held that co-defendant Hickey's mandatory minimum sentence imposed pursuant to 21 U.S.C. § 841(b)(1)(A) did not violate the Eighth Amendment. There, the defendant had two prior felony drug convictions and, most recently, had been convicted of his third involving 177.8 grams of cocaine base. 30 F.3d at 50. We noted that this circuit applies the "narrow proportionality principle" to Eighth Amendment challenges — that is, the "Eighth Amendment only prohibit[s] 'extreme sentences that are "grossly disproportionate" to the crime.'" *Id.* (citing *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring); *see also Getsy v. Mitchell*, 495 F.3d 295, 305 (6th Cir. 2007) (en banc) ("Eighth Amendment proportionality, as defined by the Supreme Court, refers 'to an abstract evaluation of the appropriateness of a sentence for a particular crime.'") (quoting *Pulley v. Harris*, 465 U.S. 37, 42-43 (1984)). We concluded that under the facts of the case, the sentence was not "grossly disproportionate" to the crime, and therefore constitutional. *Hill*, 30 F.3d at 51.

Slade's argument that his sentence is grossly disproportionate to the crime is principally premised on the claim — which, as we have already held, Slade waived — that his North Carolina conviction was improperly considered by the district court in sentencing him to life in prison. Moreover, Slade's third felony drug conviction, i.e., the instant offense, involved a greater quantity of cocaine than did the *Hill* defendant's third conviction. As in *Hill*, we conclude that Slade's sentence does not violate the Eighth Amendment. *See United States v. Flowal*, 163 F.3d 956, 963

18

(6th Cir. 1998) ("[T]his Court is bound by the precedent set forth in *United States v. Hill*, 30 F.3d 48, 50-51 (6th Cir. 1994) . . . . [which] held . . . that a mandatory term of life imprisonment without release upon a third felony drug conviction did not violate the Eighth Amendment's protection against cruel and unusual punishment.").

Finally, in his pro se brief, Slade appears to argue that *Shepard v. United States*, 544 U.S. 13 (2005), requires that a jury determine the facts of his prior felony drug offenses, or that Slade admit those facts, before the district court can use those prior convictions to enhance his sentence. Because Slade did not raise this argument in the district court, we review for plain error, and we find none. *Apprendi v. New Jersey*, 530 U.S. 466 (2000), specifically permits the sentencing court to rely on the fact of a prior conviction to "increase[ ] the penalty for a crime beyond the prescribed statutory maximum." 530 U.S. at 490. *Shepard* does not alter *Apprendi*, and Slade's argument is baseless.

## II. CONCLUSION

Accordingly, for the foregoing reasons, we **AFFIRM** the convictions and sentences of each of the defendants.